# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RITTENHOUSE PLAZA, INC.

**DEFENDANTS**

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA dba Travelers Insurance

**(b)** County of Residence of First Listed Plaintiff  Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Capital, CT
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Reidenbach & Associates, LLC William T. Dudeck, Esq.
724 W. Lancaster Ave. Ste 215 Wayne PA 19087 (610) 572-7075

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
$75,000+

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Nov 18, 2025 | /s/ William T. Dudeck |

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: Philadelphia, PA _____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?     Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?     Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?     Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?     Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☐ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☒ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury (*Please specify*):_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☐   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☒   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| RITTENHOUSE PLAZA, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| TRAVELERS PROPERTY CASUALTY | : | |
| COMPANY OF AMERICA | : | NO.    25-6520 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (X)

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

| | | |
|---|---|---|
| 11/18/2025 | William T. Dudeck, Esq. | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 572-7075 | (628) 257-1350 | william@reidenbachlaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**


American LegalNet, Inc.
www.FormsWorkFlow.com

**REIDENBACH & ASSOCIATES, LLC**          ***Counsel for Plaintiff,***
By:    Robert A. Korn, Esquire          Rittenhouse Plaza, Inc.
       William T. Dudeck, Esquire
Attorney I.D. Nos. 9229 & 87401
Devon Square 1
724 W. Lancaster Ave., Ste. 215
Wayne, PA 19087
(610) 572-7075 TEL
(628) 257-1350 FAX
*rkorn@reidenbachlaw.com*
*william@reidenbachlaw.com*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RITTENHOUSE PLAZA, INC.** | : | |
| **1901-1905 Walnut Street** | : | |
| **Philadelphia, PA 19103** | : | |
|               **Plaintiff** | : | **No. 25-6520** |
| | : | |
| **v.** | : | |
| | : | |
| **TRAVELERS PROPERTY CASUALTY** | : | |
| **COMPANY OF AMERICA** | : | |
| **d/b/a "Travelers Insurance"** | : | |
| **One Tower Square** | : | |
| **Hartford, CT 06103** | : | |
|           **Defendant** | : | **JURY TRIAL DEMANDED** |

**COMPLAINT**

    Plaintiff, Rittenhouse Plaza, Inc. ("RPI"), by and through its undersigned counsel, files this

Complaint against Travelers Property Casualty Company of America d/b/a/ "Travelers Insurance"

("Travelers") in the above-captioned matter and, in support thereof, alleges as follows:

**I.      INTRODUCTION**

    1.    This action arises from a casualty insurance coverage dispute between the parties

relating to an underlying lawsuit, styled *Philip E. Tetlock and Barbara A. Mellers v. Hunter Roberts*

*Construction Group, LLC, et al.* Case ID No. 23-0601242 (Phila. CCP filed June 3, 2023) (the

"Underlying Lawsuit"), a true and correct copy of the complaint ("Underlying Complaint") with respect to which is attached hereto and incorporated herein as **Exhibit 1**.

2.     By way of this Complaint, RPI seeks not only damages in excess of $75,000.00 but a declaratory judgment from this Court, pursuant to Fed. R.C.P. 57 and 28 U.S.C. § 2201, that Travelers has breached its duties to defend and indemnify RPI in the Underlying Lawsuit in contravention of its obligation under and pursuant to that certain policy of Commercial Insurance that it issued unto RPI on July 29, 2020 as Policy Number Y-660-IL566839-TIL-20 with period of coverage beginning August 1, 2020 and ending August 1, 2021 (the "Policy"), a true and correct copy of which is attached and incorporated herein as **Exhibit 2**; that it has acted in "bad faith" toward RPI in violation of 42 Pa. C.S. § 8371; and that Travelers must defend and indemnify RPI under the Policy with respect to the Underlying Lawsuit.

## II.     THE PARTIES

3.     RPI is a Pennsylvania corporation and domiciled in Pennsylvania by virtue of having its principal place of business located at 1901-1905 Walnut Street, Philadelphia, Pennsylvania 19103.

4.     Travelers is a Connecticut corporation and domiciled in Connecticut by virtue of having its principal place of business located at One Tower Square, Hartford, Connecticut 06813.

5.     At all times relevant Travelers was licensed and registered to write policies of casualty insurance in Pennsylvania, including the Policy, under NAIC No. 25674.

## III.     JURISDICTION AND VENUE

6.     This Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1) because RPI and Travelers are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Philadelphia County, Pennsylvania.

## IV.    BACKGROUND

### A.    The Policy

8.    The Policy provides for the defense and indemnification of RPI by Travelers for claims asserted against its insured for damages "because of" either "bodily injury" or "property damage."

9.    The Policy covers not only claims seeking payment to repair property damage, but also suits in which a third-party seeks damage "because of" property damage. *See* Exhibit 2, Coverage A, 1. a: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." *See id*.

### B.    The Legal Landscape

10.    Under long-standing Pennsylvania law, an insurer's duty to defend is broader than its duty to indemnify. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc*., 606 Pa. 584, (2010); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317 (2006); *General Acc. Inc. Co. of America v. Allen*, 547 Pa. 693 (1997); *J.H. France Refractories v. Allstate Ins. Co.*, 534 Pa. 29 (1993).

11.    The duty to defend is triggered by the allegations in the complaint and is resolved in favor of the insured when there is any ambiguity or potential for coverage. *See Erie Ins. Exch. v. Moore,* 658 Pa. 256 (Pa. 2020).

12.     An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy. *See Babcock & Wilcox Co. v. Am. Nuclear Insurers,* 131 A.3d 445, 456 (Pa. 2015) (citation omitted); *see also Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987) (describing the duty to defend as arising "whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." (emphasis in original)); *see also Gedeon v. State Farm Mut. Auto. Ins. Co*., 410 Pa. 55 (1963) (describing same legal principle).

13.     The complaint need only contain "one allegation that falls within the scope of the policy's coverage for the duty to defend to be triggered." *Vitamin Energy, LLC v. Evanston Ins. Co.,* 22 F.4th 386, 394 (3rd Cir. 2022)(alterations omitted).

14.     Additionally, Pennsylvania courts have held that damages "because of" property damage are broader than simply costs to remediate such the underlying property damage itself, and include amounts sought that are causally connected to otherwise-qualifying property damage. *E.g., Mayer Pollock Steel Corp. v. Liberty Mut. Fire Ins. Co.*, No. CIV. A. 95-6300, 1996 WL 328311, at *3-4 (E.D. Pa. June 14, 1996). [1]

### C.    The Underlying Lawsuit

---

[1] "There is a clear causal relationship between the fire and subsequent damage to the holding tank, and the use of the foam to put it out, making the cost of the use of the foam a consequential damage. In the words of the policy, the cost of the foam becomes 'those sums that the insured becomes legally obligated to pay as damages because of… property damage to which this insurance applies'; that is, it is a sum the insured incurred because of the property damages." (ellipsis in original); s*ee also Mattiola Const. Corp. v. Com. Union Ins. Co.*, 60 Pa. D. & C.4th 412 (Phila. 2002) (damages resulting from delay in construction project following property damage were "because of" property damage).

15.     By way of background, on June 3, 2023, Philip E. Tetlock and Barbara A. Mellers (the "Tetlocks") commenced the Underlying Lawsuit by filing the Underlying Complaint in the Court of Common Pleas of Philadelphia County.  *See*, **Exhibit 1**.

16.     In the Underlying Complaint, the Tetlocks asserted several claims against Plaintiff related to a cement explosion which occurred in the course of a construction project taking place immediately adjacent to RPI which caused wet concrete to cover portions of the RPI, including a portion of the Tetlocks' units as well as adjacent and surrounding "Common Elements" and/or "Limited Common Elements" as defined in the Underlying Complaint.

17.     In the Underlying Lawsuit, the Tetlocks sought damages from RPI "because of" property damage.

18.     Among other allegations, the Underlying Complaint alleged that, "The cement explosion…caused damage to many exterior structures such as decorative fountains, terracotta features, decorative iron features, skylights and pavers of the Building."  *See*, **Exhibit 1**, ¶ 23.

19.     The Underlying Complaint alleged that "The cement explosion sent a downpour of cement and debris, causing damage to interior and exterior portions of Plaintiffs' Unit, including but not limited to, the terraces, balconies, windows, window frames, floors, building façade, decks, exterior doors and exterior walls." *See*, **Exhibit 2**, ¶ 24.

20.     The Underlying Complaint alleged that, "The cement explosion damaged or destroyed Plaintiffs' personal property" and proceeded to list several allegedly destroyed items of personal property. *See*, **Exhibit 2**, ¶ 26.

21.     The Underlying Complaint alleged that, "As a result of the cement explosion, Plaintiffs incurred substantial loss of time, money and emotional costs to address the multitude of issues and damages to their property". *See*, **Exhibit 2**, ¶ 29.

22.     The Underlying Complaint alleged that "As a result of the cement explosion, Plaintiffs have suffered monetary damages, and will suffer additional damages, including, but not limited to, repair and replacement costs, permanent and irreparable damage to structures and systems within Plaintiffs' unit, costs for temporary housing, decreased value of Plaintiffs' Unit and loss of time from work". *See*, **Exhibit 2**, ¶ 34.

23.     Most importantly, the Underlying Complaint alleged the failure of RPI to "take affirmative steps to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion." *See*, **Exhibit 2**, ¶ 38.

24.     In Count III of the Underlying Complaint against RPI, the Tetlocks incorporated the above-referenced paragraphs of property damage and RPI's alleged liability for them both as a matter of contract and under the Pennsylvania Cooperative Act. *See*, **Exhibit 2**, ¶ 65.

25.     Through this incorporation, the claims asserted in the Underlying Lawsuit do involve an "occurrence" that caused "property damage" as that term is defined in the Policy as well as damages that occurred "because of" property damage.

26.     The Underlying Complaint thus alleged claims of personal and real property damages for which the plaintiffs claimed RPI was, at least in part, responsible after the initial cement explosion.

27.     Therefore, Travelers duty to defend was triggered in the Underlying Lawsuit.

**D.  Travelers Undertakes and Then Denies its Duties to Indemnify and Defend RPI**

28.     RPI provided Travelers with timely notice of the Underlying Lawsuit.

29.     On or around July 3, 2023, Travelers indicated that it would defend RPI in the Underlying Lawsuit and did so through its counsel, Reilly, McDevitt, & Henrich, P.C. ("Insurance

Counsel"). A true and correct copy of Traveler's correspondence indicating it would defend Plaintiff is attached hereto as **Exhibits 3 and 4**.

30.     Shortly thereafter Insurance Counsel entered its appearance in the Underlying Lawsuit.

31.     At all times relevant, Insurance Counsel acted as Travelers' duly authorized agent with respect to the Underlying Lawsuit.

32.     On July 18, 2023, Travelers retroactively denied its obligation to defend or indemnify RPI in the Underlying Lawsuit on the grounds stated therein ("Denial of Coverage"). a true and correct copy of its correspondence with respect to which is attached hereto as **Exhibit 5**.

33.     Rather than continue to defend RPI in the Underlying Lawsuit under a reservation of rights, Travelers abruptly discontinued representation of RPI.

34.     On August 24, 2023, Insurance Counsel notified RPI of its withdrawal of representation in light of the Denial of Coverage, a true and correct copy of which correspondence is attached hereto as **Exhibit 6**.

35.     Insurance Counsel provided no notice to RPI during which it could secure replacement counsel before ceasing representation.

36.     Further, Insurance Counsel never officially attempted to withdraw his appearance in the Underlying Lawsuit.

37.      Travelers' brash actions in revoking its defense forced RPI to scramble to retain defense counsel in the Underlying Lawsuit.

38.     Travelers' sudden and unannounced revocation of its defense of RPI was contrary to well-settled industry standards and clearly an act of bad faith.

39.    As of the date of this Complaint, Travelers maintains that it does not owe RPI any duties of defense or indemnity under the Policy with respect to the Underlying Lawsuit.

40.    RPI disputes Travelers' Denial of Coverage.

41.    RPI has since mounted its own defense in the Underlying Lawsuit, pursuant to a reservation of rights, at significant cost and expense.

## V.    CAUSES OF ACTION

### COUNT I – DECLARATORY JUDGMENT

42.    RPI repeats and realleges the allegations set forth in paragraphs 1 through 41 of this Complaint as though fully set forth herein.

43.    As evidenced by the Denial of Coverage, an actual case and controversy exists between RPI and Travelers with respect to their respective rights and duties under the Policy in connection with the Underlying Lawsuit. Specifically, a dispute exists as to whether Travelers breached its duties to defend and to indemnify RPI in the Underlying Lawsuit.

44.    By way of its Denial of Coverage, Travelers stated, in pertinent part, as follows:

Based on the allegations in the [Underlying Lawsuit], [Tetlock and Mellers] are seeking to recover for [RPI's] breach of the lease as well as for its violation of the Pennsylvania Real Estate Cooperative Act due to its failure to maintain, repair and replace the Common Elements and Limited Common Elements of the building surrounding or impacting [Tetlock and Mellers'] unit. Please note that these claims do not constitute 'bodily injury' or 'property damage' caused by an 'occurrence' as those terms are defined in the Policy. Furthermore, these claims would be for injunctive relief which do not constitute claims for legal or compensatory damages as required by the liability portion of the Policy. Accordingly, no coverage is available for these claims under the Policy and as such, Travelers has no obligation to defend or indemnify Rittenhouse in the [Underlying] Lawsuit.

*See,* **Exhibit 5**, p 3.

45.    By way of its Denial of Coverage, Travelers further stated, that certain "Exclusions" within the Policy rendered the insurance inapplicable to the Underlying Lawsuit, namely the

exclusions for "Pollution" (Exclusion 2.f), "Damage to Property (Exclusion 2.j.1) and "Damage To Impaired Property or Property Not Physically Injured" (Exclusion 2.m). *Id*., pp. 3-4.

46.     Other than the three exclusions referred to in its Denial of Coverage, Traveleers has cited no other exclusion, and no other exclusion provides any basis for a denial of coverage.

47.     RPI nonetheless maintains – and has consistently maintained – that the allegations against it in the Underlying Lawsuit fall within the scope of coverage under the Policy.  *See* Letter from Berman to Forbes-McBean dated 04/14/2025, a true and correct copy of which is attached hereto as **Exhibit 7**.

48.     RPI therefore seeks a judicial declaration that Travelers, notwithstanding the grounds stated in the Denial of Coverage, had and has a contractual obligation to defend and indemnify RPI in the Underlying Lawsuit and must enter its counsel's appearance in accordance with that duty and pay for that defense.

## COUNT II – BREACH OF CONTRACT

49.     RPI repeats and realleges the allegations set forth in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50.     The Policy sets forth contractual obligations on the part of Travelers to provide a defense and indemnity to RPI when claims are made against them that satisfy terms of the Policy.

51.     RPI has complied with all terms and conditions of the Policy.

52.     The allegations set forth against RPI in the Underlying Complaint fall within the scope of insurance under the Policy.

53.     None of the exclusions relied upon in the Denial of Coverage preclude coverage under the Policy.

54.    Travelers' communications to RPI claim that Traveler's denial of coverage is proper because the claims of the Underlying Lawsuit do not allege "bodily injury," or "property damage" or an "occurrence."

55.    Travelers' position is untenable under the Policy as a matter of law.

56.    The Policy covers not only claims seeking payments to repair property damage, but also lawsuits in which the plaintiff seeks damage "because of" property damage.

57.    Property damage claims permeate the Underlying Lawsuit and thus compel Travelers to perform its obligations to defend and indemnify Plaintiff.  Put another way, in the absence of the property damage to RPI and the Tetlock's unit (including its Limited Common Elements), the Tetlocks would have no claim against RPI.  Thus, the Underlying Lawsuit is "because of" property damage within the meaning of the Policy.

## COUNT III – BAD FAITH (42 Pa. C.S. § 8371)

58.    RPI repeats and realleges the allegations set forth in paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.    Travelers owed contractual and legal duties to RPI under the Policy, including but not limited to the duty to investigate claims fairly, the duty to provide a defense, and the duty to indemnify covered losses.

60.    Even after the Denial of Coverage, RPI repeatedly implored Travelers to reconsider its position but Travelers continued to maintain the position taken and bases stated in its Denial of Coverage.

61.    Travelers breached its duties by denying coverage without a reasonable basis, by failing to timely and thoroughly investigate the claim within the fifteen days between July 3, 2023

and July 18, 2023, and by refusing to provide a defense to RPI in the Underlying Lawsuit, all despite the existence of clear coverage and duty to defend and indemnify RPI under the Policy.

62.    Further, Travelers' decision to abruptly withdraw its defense of RPI, rather than provide RPI with advance notice and continuous defense RPI under a reservation of right, was indicative of its bad faith.

63.    Travelers' actions constitute bad faith conduct under 42 Pa. C.S. § 8371, including but not limited to:

a.    Failing to adopt and implement reasonable standards for the prompt investigation and handling of insurance claims, in violation of 40 P.S. § 1171.5(a)(10)(iv);

b.    Refusing to pay claims without conducting a reasonable investigation, in violation of 40 P.S. § 1171.5(a)(10)(d);

c.    Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability was reasonably clear, in violation of § 1171.5(a)(10)(f);

d.    Compelling the insured to institute litigation to recover amounts due under the policy by offering substantially less than amounts ultimately recovered, in violation of § 1171.5(a)(10)(g); and

e.    Failing to provide a reasonable explanation of the basis in the policy for denial of the claim, in violation of § 1171.5(a)(10)(n).

64.    Travelers' conduct was knowingly reckless, willful, and in bad faith, as demonstrated by its disregard for the clear language of the policy and its duties under Pennsylvania law.

65.    As a result of Travelers' bad faith conduct, RPI has suffered damages including, but

not limited to defense costs, indemnity exposure, legal fees, delay damages, emotional distress, and other consequential harm.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Rittenhouse Plaza, Inc. prays for judgment as follows:

a.    As to Count I, the entry of an appropriate declaratory judgment in favor of Plaintiff and against Defendant on Defendant's duties to defend and indemnify Plaintiff in connection with the Underlying Lawsuit;

b.    As to Count II, the entry of a monetary judgment in favor of Plaintiff and against Defendant for an amount in excess of $75,000.00, including compensatory damages for its covered losses, pre- and post- judgment interest thereon, and attorneys' fees and costs in an amount to be determined; and

c.    As to Count III, the entry a monetary judgment in favor of Plaintiff and against Defendant for an award interest on the amount of Plaintiff's claim from the date the claim was made by Plaintiff in an amount equal to the prime rate of interest plus 3%, punitive damages against Defendant and an assessment of court costs and attorney's fees against Defendant.

Respectfully submitted,

**REIDENBACH & ASSOCIATES, LLC**

Dated: <u>November 18, 2025</u>          By:    */s/ William T. Dudeck*
                                          Robert A. Korn, Esq.
                                          William T. Dudeck, Esq.
                                          ***Counsel for Plaintiff***,
                                          Rittenhouse Plaza, Inc.

# EXHIBIT "1"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | **JUNE 2023**     **01242** |
| | E-Filing Number: 2306029019 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| PHILIP E. TETLOCK | HUNTER ROBERTS CONSTRUCTION GROUP, LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1901 WALNUT STREET APT. 21A PHILADELPHIA PA 19103 | 1717 ARCH STREET SUITE 3410 PHILADELPHIA PA 19103 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| BARBARA A. MELLERS | CARSON CONCRETE CORPORATION |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1901 WALNUT STREET APT. 21A PHILADELPHIA PA 19103 | 5 CREEK PARKWAY BOOTHWYN PA 19061 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | RITTENHOUSE PLAZA, INC., A COOPERATIVE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 1901 WALNUT STREET PHILADELPHIA PA 19103 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 3 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal <br> [ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less <br> [X] More than $50,000.00 | [ ] Arbitration <br> [X] Jury <br> [ ] Non-Jury <br> [ ] Other: | [ ] Mass Tort <br> [ ] Savings Action <br> [ ] Petition | [ ] Commerce <br> [ ] Minor Court Appeal <br> [ ] Statutory Appeals | [ ] Settlement <br> [ ] Minors <br> [ ] W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 3T - TORTS TO LAND |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** <br> JUN 13 2023 <br> **S. RICE** | IS CASE SUBJECT TO COORDINATION ORDER? <br> YES     NO |
|---|---|---|

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>PHILIP E TETLOCK , BARBARA A MELLERS</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| DANIEL R. UTAIN | UNION MEETING CORPORATE CENTER <br> 910 HARVEST DRIVE <br> PO BOX 3037 <br> BLUE BELL PA 19422 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (610) 941-2582 | (610) 684-2032 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 85619 | dutain@kaplaw.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *DANIEL UTAIN* | Tuesday, June 13, 2023, 02:53 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

KAPLIN STEWART MELOFF REITER & STEIN, PC
BY:    SANDHYA M. FELTES, ESQUIRE
       DANIEL R. UTAIN, ESQUIRE
       ATTORNEY ID NOS. 58751, 85619
910 Harvest Drive, PO Box 3037
Blue Bell, PA 19422
(610) 684-2000
sfeltes@kaplaw.com
dutain@kaplaw.com



Attorneys for Plaintiffs

| | |
|---|---|
| PHILIP E. TETLOCK<br>1901 Walnut Street, Apt. 21A<br>Philadelphia, PA 19103<br><br>and<br><br>BARBARA A. MELLERS<br>1901 Walnut Street, Apt. 21A<br>Philadelphia, PA 19103,<br><br>    Plaintiffs<br><br>v.<br><br>HUNTER ROBERTS CONSTRUCTION<br>GROUP, LLC<br>1717 Arch Street, Suite 3410<br>Philadelphia, PA 19103<br><br>and<br><br>CARSON CONCRETE CORPORATION<br>5 Creek Parkway<br>Boothwyn, PA 19061<br><br>and<br><br>RITTENHOUSE PLAZA, INC., a Cooperative<br>1901 Walnut Street<br>Philadelphia, PA 19103,<br><br>    Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY, PA<br><br><br>JUNE TERM, 2023<br><br>NO. |

16866/1/10023092v1

## NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
Telephone: (215) 238-1701

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE., SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadefia, PA 19107
Telefono: (215) 238-1701

KAPLIN STEWART MELOFF REITER & STEIN, PC
BY:    SANDHYA M. FELTES, ESQUIRE
       DANIEL R. UTAIN, ESQUIRE
       ATTORNEY ID NOS. 58751, 85619
910 Harvest Drive, PO Box 3037
Blue Bell, PA 19422
(610) 684-2000
sfeltes@kaplaw.com
dutain@kaplaw.com                                    Attorneys for Plaintiffs

| | |
|---|---|
| PHILIP E. TETLOCK<br>1901 Walnut Street, Apt. 21A<br>Philadelphia, PA 19103<br><br>and<br><br>BARBARA A. MELLERS<br>1901 Walnut Street, Apt. 21A<br>Philadelphia, PA 19103,<br><br>               Plaintiffs<br><br>v.<br><br>HUNTER ROBERTS CONSTRUCTION<br>GROUP, LLC<br>1717 Arch Street, Suite 3410<br>Philadelphia, PA 19103<br><br>and<br><br>CARSON CONCRETE CORPORATION<br>5 Creek Parkway<br>Boothwyn, PA 19061<br><br>and<br><br>RITTENHOUSE PLAZA, INC., a Cooperative<br>1901 Walnut Street<br>Philadelphia, PA 19103,<br><br>               Defendants. | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY, PA<br><br><br>JUNE TERM, 2023<br><br>NO. |

16866/1/10083082
Case ID: 230601242

## COMPLAINT

### The Parties

1.    Plaintiff Philip E. Tetlock is an adult individual residing at 1901 Walnut Street, Apt. 21A, Philadelphia, PA 19103.

2.    Plaintiff Barbara E. Mellers is an adult individual residing at 1901 Walnut Street, Apt. 21A, Philadelphia, PA 19103.

3.    Defendant Hunter Roberts Construction Group, LLC is a Delaware limited liability company with a place of business located at 1717 Arch Street, Suite 3410, Philadelphia, PA 19103 (hereinafter **"Hunter Roberts"**).

4.    Defendant Carson Concrete Corporation is a Pennsylvania corporation with its principal place of business located at 5 Creek Parkway, Boothwyn, PA 19061 (hereinafter **"Carson Concrete"**).

5.    Defendant Rittenhouse Plaza, Inc. is a Pennsylvania corporation with its principal place of business located at 1901 Walnut Street, Philadelphia, PA 19103 (hereinafter **"Rittenhouse Plaza"**).

### The Rittenhouse Cooperative

6.    Defendant Rittenhouse Plaza is the owner of the property (**"Rittenhouse Property"**) located at 1901-1905 Walnut Street, Philadelphia, Pennsylvania, which is improved with a multi-story apartment building known as the "Rittenhouse Plaza Apartments" (**"Building"**) consisting of 121 units.

7.    The Rittenhouse Property has been operated as a housing cooperative governed by the "Declaration of Cooperative Ownership, Rittenhouse Plaza, Inc., A Cooperation" dated May

1, 1994 (**"Declaration"**) and the Pennsylvania Real Estate Cooperative Act, 68 Pa.C.S.A. § 4101, et seq., (**"Act"**).

8.      A true and correct copy of the Declaration is attached hereto as **Exhibit "1"** and incorporated herein by reference.

9.      Pursuant to the Declaration and the Act, individual shareholders of Defendant Rittenhouse Plaza occupy apartments in the Building pursuant to proprietary leases between Defendant Rittenhouse Plaza and the shareholders.

10.     The Building is comprised of the individual units leased to shareholders, "Common Elements" to be used by all shareholders of Defendant Rittenhouse Plaza, and "Limited Common Elements", such as balconies and terraces, which are specifically allocated to specific unit owners of Defendant Rittenhouse Plaza.

11.     Defendant Rittenhouse Plaza is required to maintain the Common Elements and Limited Common Elements of the Rittenhouse Property.

<u>**Plaintiffs' Unit in the Building**</u>

12.     Plaintiffs are the owners of a cooperative interest in Defendant Rittenhouse Plaza.

13.     Plaintiffs and Defendant Rittenhouse Plaza are parties to a "Rittenhouse Plaza, Inc. Proprietary Lease" dated May 3, 2011 (**"Lease"**) whereby Plaintiffs acquired a 2% cooperative interest in Defendant Rittenhouse Plaza and the right to occupy Unit 21A in the Building (**"Plaintiffs' Unit"**).

14.     Plaintiffs' Unit includes the right to use certain Limited Common Elements including balconies and terraces.

**The Cement Explosion**

15.     Upon information and belief, in and around July, 2021, Defendant Hunter Roberts was constructing a mixed-use high-rise building located at 1911 Walnut Street, Philadelphia, known as The Laurel Rittenhouse (the **"Construction Project"**).

16.     The Construction Project was located on a property adjacent to the Rittenhouse Property.

17.     Upon information and belief, Defendant Carson Concrete was contracted by Defendant Hunter Roberts as a subcontractor to perform concrete construction work for the Construction Project.

18.     At all material times, Defendant Hunter Roberts was acting individually and through its subcontractors, including but not limited to Defendant Carson Concrete, on the Construction Project.

19.     At all material times, Defendant Carson Concrete and other subcontractors performed construction work on the Construction Project under the direction and control of Defendant Hunter Roberts.

20.     On or about July 15, 2021, at approximately 2:30 p.m., during a cement column pour for the Construction Project, the frame or form for the column exploded causing cement to rain down at a high velocity from the 35th floor of the Laurel down 150 feet into approximately fifteen floors of the Building, including Plaintiffs' Unit.

21.     The cement explosion caused wet cement to overspread major portions of the Building.

22.     The cement explosion resulted in various Common Elements and Limited Common Elements of the Building, including the roof, terraces, patios, windows, doors and other exterior

Case ID: 230601242

portions of the Building, to be coated with approximately one quarter inch of cement.

23.    The cement explosion also caused damage to many exterior structures such as decorative fountains, terracotta features, decorative iron features, skylights and pavers of the Building.

24.    The cement explosion sent a downpour of cement and debris, causing damage to interior and exterior portions of Plaintiffs' Unit, including but not limited to, the terraces, balconies, windows, window frames, floors, building façade, decks, exterior doors and exterior walls.

25.    The cement coated Plaintiffs' Unit from front to back with a layer of rock-filled cement that, when dried, contained sharp shards that went directly into the soles of shoes and scratched the floors of Plaintiffs' Unit.  These shards are still spread throughout the external property at the time of this filing.

26.    The cement explosion damaged or destroyed Plaintiffs' personal property, including, but not limited to:

- Four anti-gravity lounge chairs on the front deck.
- A large, sculpted stone table, weighing approximately 150 pounds, on the front deck.
- Four heavy iron rod chairs and pillows.
- Plants and planters.
- Two small tables on the front deck.
- Four chairs and a mosaic table on the back deck.
- Garden hoses
- The Unit's air conditioning system.
- Wall tiling on the south balcony and east and west terraces.

- Two artistic fountains.

- Handmade bench.

27. As a result of the cement explosion, Plaintiffs lost the use of 600 square feet of front deck space and 1000 square feet of back deck space, which Plaintiffs used frequently for relaxation, to play with their grandchildren, to entertain friends and guests and for mini-conferences of visiting colleagues.

28. As a result of the damage caused by the cement explosion, the resale value of Plaintiffs' Unit plummeted, causing Plaintiffs to abandon their plans to retire and relocate to California.

29. As a result of the cement explosion, Plaintiffs incurred substantial loss of time, money and emotional costs to address the multitude of issues and damages to their property.

30. Plaintiffs will be required to relocate for an extended period of time due to construction and repairs to Plaintiffs' Unit.

31. Plaintiff Mellers had been watering plants on the front deck of Plaintiffs Unit and had just returned inside when the cement and debris rained down on Plaintiffs' Unit, narrowly avoiding injury.

32. During the six months after the cement explosion, Plaintiffs, and other residents, were constantly worried about a repetition of the cement explosion.

33. Even after the cement explosion, Plaintiffs continued to be subjected to debris falling from the Construction Project onto Plaintiffs' Unit, including tar-like crane grease, construction tools, food, wrappers and cigarettes.

34. As a result of the cement explosion, Plaintiffs have suffered monetary damages, and will suffer additional damages, including, but not limited to, repair and replacement costs,

permanent and irreparable damage to structures and systems within Plaintiffs' unit, costs for temporary housing, decreased value of Plaintiffs' Unit and loss of time from work.

**Plaintiffs' Repair Requests**

35.    Section 301 of the Declaration requires Defendant Rittenhouse Plaza to maintain, repair and replace the Common Elements and the Limited Common Elements of the Building.

36.    Section 4112 of the Act requires Defendant Rittenhouse Plaza to act in good faith in the performance of its duties and obligations.

37.    Section 4112 of the Act requires Defendant Rittenhouse Plaza to make its records available for inspection by its shareholders, such as Plaintiffs.

38.    For approximately twenty-three (23) months, Plaintiffs have requested that Defendant Rittenhouse Plaza take affirmative steps to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion.

39.    During that time, Plaintiffs have requested that Defendant Rittenhouse Plaza provide information relating to its plans to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion.

40.    Despite those requests, Defendant Rittenhouse Plaza has not repaired or maintained the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion, nor has Defendant Rittenhouse Plaza provided Plaintiffs with any information relating to its plans to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion.

41.    As a result, Plaintiffs sent Defendant Rittenhouse Plaza a letter dated April 27, 2023 requesting the right to inspect the records relating to the plans to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion.

42.    A true and correct copy of that April 27, 2023 letter is attached hereto as **Exhibit "2"** and incorporated herein by reference.

43.    Defendant Rittenhouse Plaza received the April 27, 2023 letter.

44.    To date, Defendant Rittenhouse Plaza has not provided Plaintiffs with access to inspect any records relating to the plans to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion.

45.    Nor has Defendant Rittenhouse Plaza informed Plaintiffs of its specific plans to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion.

46.    Plaintiffs have concerns that Defendant Rittenhouse Plaza intends to repair and maintain the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit that were damaged by the cement explosion in a manner that is not consistent with the quality of the Common Elements and the Limited Common Elements of the Building.

47.    Additionally, it is believed that the necessary repairs require the use of dangerous chemicals that will require Plaintiffs to secure alternative housing to protect their health.

48.    However, Defendant Rittenhouse Plaza has failed to make arrangements to relocate Plaintiffs.

49.     Defendant Rittenhouse Plaza has also failed and refused to disclose the proposed repairs and methods, or the timing thereof, so as to permit Plaintiffs to secure a place to stay during the repairs.

50.     All conditions precedent have been performed or have been waived.

## COUNT I – NEGLIGENCE
### (Plaintiffs v. Hunter Roberts)

51.     Plaintiffs incorporate the above paragraphs as though fully set forth herein at length.

52.     At all material times, Defendant Hunter Roberts performed construction activities on the Construction Project, including but not limited to, the administration, supervision and control of subcontractors.

53.     On or about July, 15, 2021, Defendant Hunter Roberts was the general contractor (?) responsible for and/or in charge of controlling all construction activity on the Construction Project.

54.     Defendant Hunter Roberts owed a duty to Plaintiffs to exercise due care in performing construction activities on the Construction Project.

55.     Defendant Hunter Roberts breached its duty of care to Plaintiffs by performing construction activities on the Construction Project negligently, carelessly and/or with reckless disregard to Plaintiffs.

56.     The concrete explosion was caused by Defendant Hunter Roberts' negligence, including but not limited to the following:

    (a)     failing to perform construction activities in a safe manner;

    (b)     failing to properly supervise and control the work performed by subcontractors, suppliers and laborers on the Construction Project;

(c)     failing to assure that the construction activities did not create a dangerous condition or hazard to adjacent properties;

(d)     failing to remediate unsafe conditions on the Construction Project;

(e)     failing to warn adjacent property owners of dangerous conditions;

(f)     failing to comply with applicable standards, codes and regulations relating to construction projects; and

(g)     failing to erect barriers and/or other protections to prevent damage to adjacent properties from the construction activities.

57.     As a direct and/or proximate result of Defendant Hunter Roberts' negligence, Plaintiffs sustained significant damages, including but not limited to property damage, loss of use of Plaintiffs' Unit, amenities and limited common areas, diminished value of their condominium unit, insurance deductibles, and other monetary and non-monetary damages.

**WHEREFORE**, Plaintiffs Philip E. Tetlock and Barbara E. Mellers demand judgment in their favor and against Defendant Hunter Roberts Construction Group, LLC in an amount in excess of $50,000, plus attorney's fees, costs and such other relief as the Court deems appropriate.

## COUNT II – NEGLIGENCE
(Plaintiffs v. Carson Concrete)

58.     Plaintiffs incorporate the above paragraphs as though fully set forth herein at length.

59.     On or about July 15, 2021, Defendant Carson Concrete was the cement contractor/subcontractor on the Construction Project.

60.     Upon information and belief, Defendant Carson Concrete was responsible for, inter alia, building forms and frames for the building columns, and pouring cement for the construction of building columns on the Construction Project.

61.    Defendant Carson Concrete owed a duty to Plaintiffs to exercise due care in performing construction activities on the Construction Project.

62.    Defendant Carson Concrete breached its duty of care to Plaintiffs by performing construction activities on the Construction Project negligently, carelessly and/or with reckless disregard to Plaintiffs.

63.    The concrete explosion was caused by Defendant Carson Concrete's negligence, including but not limited to the following:

(a)    constructing forms and/or frames for building columns in a defective manner;

(b)    pouring cement in a manner which would cause the failure of the column forms/frames;

(c)    failing to perform construction activities in a safe manner;

(d)    failing to assure that its construction activities did not create a dangerous condition or hazard to adjacent properties;

(e)    failing to remediate unsafe conditions on the Construction Project;

(f)    failing to warn adjacent property owners of dangerous conditions;

(g)    failing to comply with applicable standards, codes and regulations relating to construction projects; and

(h)    failing to erect barriers and/or other protections to prevent damage to adjacent properties from the construction activities.

64.    As a direct and/or proximate result of Defendant Carson Concrete's negligence, Plaintiffs sustained significant damages, including but not limited to property damage, loss of use

of Plaintiffs' Unit, amenities and limited common areas, diminished value of their condominium

unit, insurance deductibles, and other monetary and non-monetary damages.

**WHEREFORE**, Plaintiffs Philip E. Tetlock and Barbara E. Mellers demand judgment in

their favor and against Defendant Carson Concrete Corporation in an amount in excess of $50,000,

plus attorney's fees, costs and such other relief as the Court deems appropriate.

### COUNT III – BREACH OF CONTRACT
(Plaintiffs v. Rittenhouse Plaza)

65.    Plaintiffs incorporate the above paragraphs as though fully set forth herein at length.

66.    Pursuant to the Declaration and the Lease, Defendant Rittenhouse Plaza is obligated

to repair and maintain the Common Elements and the Limited Common Elements of the Building

surrounding or impacting Plaintiffs' Unit in an appropriate manner.

67.    To date, Defendant Rittenhouse Plaza has failed to repair and maintain the Common

Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs'

Unit.

68.    Defendant Rittenhouse Plaza's conduct constitutes a breach of the Lease and the

Declaration.

69.    Defendant Rittenhouse Plaza has failed to perform its fiduciary obligations to

Plaintiff in connection with the repair and maintenance of the Common Elements and the Limited

Common Elements of the Building surrounding or impacting Plaintiffs' Unit.

70.    Plaintiffs have been harmed by Defendant Rittenhouse Plaza's breach of the Lease

and the Declaration in an amount yet to be determined but believed to be in excess of $50,000.00.

**WHEREFORE**, Plaintiffs Philip E. Tetlock and Barbara E. Mellers demand judgment in their favor and against Defendant Rittenhouse Plaza, Inc. in an amount in excess of $50,000, plus attorney's fees, costs and such other relief as the Court deems appropriate.

## COUNT IV – VIOLATION OF THE ACT
### (Plaintiffs v. Rittenhouse Plaza)

71.     Plaintiffs incorporate the above paragraphs as though fully set forth herein at length.

72.     Pursuant to the Act, Defendant Rittenhouse Plaza is obligated to act in good faith.

73.     Pursuant to the Act, Defendant Rittenhouse Plaza is obligated to permit Plaintiffs the right to inspect the records of Defendant Rittenhouse Plaza.

74.     Despite repeated requests, Defendant Rittenhouse Plaza has failed and refused to allow Plaintiffs the opportunity to inspect the records relating to the repair and maintenance of the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit.

75.     Defendant Rittenhouse Plaza has impeded the flow of essential information about the scope, timing and exact nature of the repairs planned for Plaintiffs' Unit, and Defendants' insurance coverage for the damages, making it impossible to determine the full range of Plaintiffs' damages.

76.     It is believed that Defendant Rittenhouse Plaza will not permit Plaintiffs to inspect the records relating to the repair and maintenance of the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit because those records will demonstrate that Defendant Rittenhouse Plaza intends to do so in an inappropriate manner.

77.     Defendant Rittenhouse Plaza has failed to perform its duties in good faith.

78.     Defendant Rittenhouse Plaza's conduct constitutes a breach of the Act.

**WHEREFORE**, Plaintiffs Philip E. Tetlock and Barbara E. Mellers respectfully request that the Court:

(a) Declare that Plaintiffs are entitled to full and unfettered access to all of the documents relating to the repair and maintenance of the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit;

(b) Declare that Defendant Rittenhouse Plaza must grant Plaintiffs full and unfettered access to all of the documents relating to the repair and maintenance of the Common Elements and the Limited Common Elements of the Building surrounding or impacting Plaintiffs' Unit;

(c) Require Defendant Rittenhouse Plaza to obtain Plaintiffs' consent of the contractors who will perform work to Plaintiffs' Unit and Limited Common Elements and the repairs Plaintiffs' Unit and Limited Common Elements;

(d) Declare that Defendant Rittenhouse Plaza has failed to act in good faith and has violated the Act;

(e) Award damages in favor of Plaintiff and against Defendant Rittenhouse Plaza in an amount in excess of $50,000;

(f) Award Plaintiffs attorney's fees and costs; and

(g) Grant such other relief as the Court deems appropriate.

Respectfully submitted,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

**By:** _/s/Daniel R. Utain, Esquire_
Sandhya M. Feltes, Esquire
Daniel R. Utain, Esquire
Attorneys for Plaintiffs

Dated: June 13, 2023

16866/1/10083082v4
Case ID: 230601242

DocuSign Envelope ID: 6962F5E4-F067-445C-A929-4B4CE2474F04

## **VERIFICATION**

I, **PHILIP E. TETLOCK,** hereby verify that I am a Plaintiff in this action and that the

facts set forth in the Complaint are true and correct to the best of my knowledge, information and

belief.  I acknowledge that I am subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn

falsification to authorities.

_____

**PHILIP E. TETLOCK**

Dated: _____
       June 13, 2023

Case ID: 230601242

DocuSign Envelope ID: 6962F5E4-F067-445C-A929-4B4CE2474F04

## <u>VERIFICATION</u>

I, **BARBARA A. MELLERS,** hereby verify that I am a Plaintiff in this action and that the

facts set forth in the Complaint are true and correct to the best of my knowledge, information and

belief.  I acknowledge that I am subject to the penalties of 18 Pa.C.S.A. §4904 relating to unsworn

falsification to authorities.

DocuSigned by:

*Barbara Ann Mellers*

1BC93F144D414DA...

**BARBARA A. MELLERS**

Dated:     June 13, 2023

Case ID: 230601242

**EXHIBIT "1"**

Case ID: 230601242

DECLARATION OF COOPERATIVE OWNERSHIP

RITTENHOUSE PLAZA, INC.,  A COOPERATIVE

DATED:  MAY 1, 1994

# DECLARATION OF COOPERATIVE OWNERSHIP
# RITTENHOUSE PLAZA, INC., A COOPERATIVE

## TABLE OF CONTENTS

**ARTICLE I        GENERAL PROVISIONS**

    Section 1.1    Declaration of Cooperative Ownership ................................. 4
    Section 1.2    Applicability of Cooperative Documents ............................ 4

**ARTICLE II        DEFINITIONS**

    Section 2.1    Terms Defined in the Act ....................................................... 5
    Section 2.2    Terms Specifically Defined in this Declaration ................... 5

**ARTICLE III        DESCRIPTION OF UNITS**

    Section 3.1    Number of Units ..................................................................... 6
    Section 3.2    Description of Units ............................................................... 6
    Section 3.3    Unit Boundaries ..................................................................... 6

**ARTICLE IV        IDENTIFICATION OF COMMON ELEMENTS AND LIMITED
                      COMMON ELEMENTS**

    Section 4.1    Common Elements .................................................................. 7
    Section 4.2    Limited Common Elements ................................................... 7
    Section 4.3    Storage Closets ....................................................................... 8

**ARTICLE V        ALLOCATED INTERESTS; ASSESSMENTS, COMMON EXPENSES;
                    VOTING**

    Section 5.1    Allocated Interests ................................................................. 8
    Section 5.2    Assessments and Common Expenses .................................. 8
    Section 5.3    Voting ....................................................................................... 8

**ARTICLE VI        INSURANCE**

    Section 6.1    Insurance .................................................................................. 9

**ARTICLE VII        RESTRICTIONS ON USE; TRANSFERS**

    Section 7.1    Restrictions on Use of Units ................................................. 9
    Section 7.2    Restrictions on Transfers ...................................................... 9
    Section 7.3    Security Assignment .............................................................. 11

ARTICLE VIII    RECORDED EASEMENTS

    Section 8.1    Recorded Easements ........................................................................11

ARTICLE IX    TERMINATION

    Section 9.1    Termination ..................................................................................11

ARTICLE X    PARTITION OF COMMON ELEMENTS AND
                         UNITS

    Section 10.1    Partition of Common Elements and Units .......................................11

ARTICLE XI    EXECUTIVE BOARD; BY-LAWS

    Section 11.1    Executive Board ..........................................................................12
    Section 11.2    Complaints ..................................................................................12
    Section 11.3    By-Laws ......................................................................................12

ARTICLE XII    AMENDMENTS

    Section 12.1    Amendments ................................................................................12

ARTICLE XIII    SPECIAL DECLARANT PROVISIONS

    Section 13.1    Declarant and Association .............................................................12
    Section 13.2    Disclaimer ..................................................................................12
    Section 13.3    Time-share Estates .......................................................................13

ARTICLE XIV    MANDATORY PROPRIETARY LEASE PROVISIONS

    Section 14.1    Mandatory Proprietary Lease Provisions .........................................13

ARTICLE XV    MISCELLANEOUS

    Section 15.1    Effective Date ..............................................................................13
    Section 15.2    Table of Contents and Headings .....................................................13
    Section 15.3    Severability ..................................................................................13
    Section 15.4    Conflicts ......................................................................................13

EXHIBIT "A" LEGAL DESCRIPTION

EXHIBIT "B" DESCRIPTION OF UNITS AND ALLOCATED INTERESTS

Case ID: 230601242

# DECLARATION OF COOPERATIVE OWNERSHIP
## RITTENHOUSE PLAZA, INC., A COOPERATIVE
### Philadelphia, Pennsylvania

THIS DECLARATION is made as of the 1st day of May, 1994, by Rittenhouse Plaza, Inc., a Pennsylvania corporation (hereinafter referred to as the "Declarant" or the "Association"), as the owner of the real estate hereinafter described.

## BACKGROUND

The Declarant is the record owner of a certain parcel of real property located at 1901-1905 Walnut Street, Philadelphia, Pennsylvania, on which is located an apartment building currently known as "The Rittenhouse Plaza Apartments", as more particularly described on Exhibit "A" attached hereto and made a part hereof ("Property"). The Property has heretofore been operated as a housing cooperative, under which individual shareholders of the Declarant occupy apartment units in the Property pursuant to proprietary leases between the shareholder and the Declarant.

Pursuant to the terms of Section 4102(b) of the Pennsylvania Real Estate Cooperative Act, 68 Pa.C.S. §4101 et seq. (the "Act"), the Declarant now wishes to submit the Property to the provisions of the Act, and for that purpose has prepared and recorded this Declaration of Cooperative Ownership.

## ARTICLE I
### GENERAL PROVISIONS

Section 1.1    Declaration of Cooperative Ownership; Name.  The Declarant hereby submits the Land described in Exhibit "A" attached hereto, located in Philadelphia County, Pennsylvania, together with the building and improvements thereon erected and the easements, rights and appurtenances belonging thereto, to the provisions of the Pennsylvania Real Estate Cooperative Act, which Act is incorporated herein by this reference. The Cooperative will be known as "Rittenhouse Plaza, Inc., a Cooperative."

Section 1.2    Applicability of Cooperative Documents.  All present and future Proprietary Lessees, sublessees, occupants and lenders to Proprietary Lessees shall be subject to and shall comply with the provisions of the Act and the Cooperative Documents (as defined hereafter) and with the covenants, conditions and restrictions set forth in the Proprietary Lease to each Unit. The acceptance of a Cooperative Interest in the Association, a Proprietary Lease to any Unit or a grant of a Security Interest in any Cooperative Interest, the entering into of a sublease of any Unit, or the entering into occupancy of any Unit shall each constitute an agreement that the provisions of the Act and the Cooperative Documents and the covenants, conditions and restrictions set forth in the Proprietary Lease to each Unit are accepted and ratified by such owner, lessee, secured party, or occupant, and all of such provisions shall be covenants

4

running with the land and shall bind any person having at any time any interest or estate in the Association or any Unit, as though such provisions were recited and stipulated at length in each and every Proprietary Lease, sublease, conveyance, Security Agreement or lease thereof.

## ARTICLE II

### DEFINITIONS

Section 2.1     <u>Terms Defined in the Act</u>.  Terms defined in Section 4103 of the Act and used herein and in the By-Laws shall have the meanings specified in Section 4103 of the Act unless otherwise defined herein.

Section 2.2     <u>Terms Specifically Defined in this Declaration</u>.  In addition to the terms defined in the Act, the following terms as used herein and in the By-Laws shall have the meanings set forth herein.  All terms defined in the Act and used herein with the meanings set forth in the Act are capitalized herein.

(a)     "Building" means the building currently located on the Land.

(b)     "By-Laws" means the regulations adopted by the Association in accordance with the provisions of the Act in order to provide for the regulation and management of the Association.

(c)     "Cooperative" means Rittenhouse Plaza, Inc., a Cooperative.

(d)     "Cooperative Documents" means this Declaration, the By-Laws and the Proprietary Lease.

(e)     "Declaration" means this instrument, as executed and recorded in the Department of Records of Philadelphia County, as the same may be amended from time to time.

(f)     "Land" means that certain lot or parcel of land located in Philadelphia County, Pennsylvania, described in <u>Exhibit "A"</u> attached hereto and made a part hereof, subject to and together with the easements, agreements and conditions of record, which, by the recording of this Declaration, is intended to be submitted to the provisions of the Act.

(g)     "Majority of Proprietary Lessees" means any group of Proprietary Lessees whose Allocated Interests, when added together, exceed fifty (50%) percent.

(h)     "Property" means the Land and the Building.

(i)     "Security Agreement" means any instrument or document executed by any Proprietary Lessee to create, evidence

or secure a Security Interest in a Proprietary Lessee's Cooperative Interest.

(j)     "Shares" refers to the share certificates issued to each Proprietary Lessee to evidence his or her Cooperative Interest.

Case ID: 230601242

# ARTICLE III

## DESCRIPTION OF UNITS

Section 3.1    <u>Number of Units</u>. The Cooperative shall contain 121 Units, and no additional Units may be created except through the subdivision of existing Units pursuant to Section 4212 of the Act hereof.

Section 3.2    <u>Description of Units</u>. Each of the Units is identified by identifying number and described by size (number of rooms) and location on <u>Exhibit "B"</u> attached hereto.

Section 3.3    <u>Unit Boundaries</u>.

(a)    The boundaries of each Unit are formed by the following planes:

(i)    The plane formed by (1) the Unit-side surface, from the block inward into the Unit, of such exterior walls of the Building as adjoin such Unit and the walls and partitions of the Building which separate such Unit from adjoining Units or Common Elements, (2) the Unit-side surface of the lathing or wire behind the plaster ceiling of such Unit, downward into the Unit, and (3) the Unit-side surface of the underfloor of such Unit, upward into the Unit, all subject to Section 4202(1) of the Act.

(ii)    The Unit-side surface of the standpipes and furring, as extended, around utility shafts and columns containing pipes, ducts, wires, conduits, chutes, mechanical chases, structural elements and flues that are either Common Elements or Limited Common Elements.

(iii)    The Unit-side surface of doors and windows (and their respective frames, sills and hardware) between such Unit and adjacent Common Elements, Limited Common Elements or the exterior of the Building.

(iv)    The Unit-side surface of all grills and registers covering exhaust fans or ventilation ducts.

(v)    All air conditioning units, systems or equipment serving the Unit.

(b)    Each Unit consists of the portions of the Building located within the Unit boundaries set forth above, including, without limitation, (i) kitchen equipment, exhaust fans, lighting devices, outlets and switches, insofar as each or any of these serves only such Unit, (ii) all walls, partitions, and dividers wholly within the Unit boundaries (but excluding any pipes, ducts, wires, cables, conduits or other Common Elements contained within such walls, partitions and dividers), (iii) all doors, arches and passages wholly within the Unit boundaries and connecting portions of space enclosed thereby, and (iv) all windows and window glass, frames, and assemblies wholly within the Unit boundaries (but not exterior windows). Each Unit further includes all plumbing fixtures and piping from the coupling at which the piping enters the Unit, and all electrical wiring from the point at which such wiring leaves the electrical panel or box located in the Unit, or if the electrical panel or box is outside the Unit, from the point where the wiring enters the Unit.

Case ID: 230601242

## ARTICLE IV

### IDENTIFICATION OF COMMON ELEMENTS AND
### LIMITED COMMON ELEMENTS

Section 4.1    Common Elements. The Common Elements of the Cooperative consist of the entire Property other than the Units, including, without limitation:

(a)    The Land, including, without limitation, driveways, walks and alleys;

(b)    All portions of the Building utilized or available to be utilized for commercial purposes pursuant to leases with commercial tenants;

(c)    All air space above the surface of the Land from time to time, excluding the air space within the Building enclosed by the boundaries of a Unit;

(d)    All main walls (exclusive of the portions from the block into the center of each Unit, which are included within the Unit boundaries), foundations, structural parts, columns, girders, beams, supports and exterior walls;

(e)    All other walls, partitions, floors and ceilings not hereinabove expressly included within the Units;

(f)    All boiler rooms and laundry/storage areas contained in the basement of the Building;

(g)    All roofs and all doors, doorways, door bucks, hinges and outside trim connecting different portions of the Common Elements;

(h)    All portions of the Building (if any) used exclusively for the management, operation or maintenance of the Common Elements;

(i)    All space, if any, devoted to the use of persons employed in connection with the operation of the Property;

(j)    All installations of any systems for all central and appurtenant services and utilities such as electricity, plumbing, light, telephone, sewage, gas and cold water, including all pipes, ducts, wires, cables, and conduits used in connection therewith, whether or not located within the Unit boundaries, to the point of entry into a Unit, and all other mechanical equipment spaces;

(k)    All other apparatus and installations existing for common use.

Section 4.2    Limited Common Elements. The Limited Common Elements of the Cooperative are those Limited Common Elements described in Section 4202(4) of the Act (including, without limitation, external windows), the terraces and balconies (which shall be Limited Common Elements appurtenant to those Units which have direct access to them), the storage lockers in the basement (which shall be Limited Common Elements appurtenant to those Units to which each locker has been assigned on the date hereof), and any air conditioning units or compressors located outside of any Unit (which shall be Limited Common Elements appurtenant to those Units which are serviced by such equipment). There are no Common Elements which may be allocated subsequently as Limited Common Elements.

Case ID: 230601242

Section 4.3    Storage Closets.  The storage closets located in the hallways on each floor of the Building ("Storage Closets") have previously been allocated to specific Units, and such allocation shall not be affected by this Declaration except as follows:

(a)    All Storage Closets are Common Elements, and shall be deemed to be leased from the Association to the Proprietary Lessee of the Unit to which the Storage Closet is allocated, for a rent of $1.00 per year.

(b)    The Executive Board shall maintain a complete list of all Storage Closets and the Proprietary Lessees leasing such Storage Closets from time to time.

(c)    The right to lease a Storage Closet may be transferred between Proprietary Lessees, on such terms as they may elect, provided that written notice of each such transfer is given to the Executive Board within ten (10) days after such transfer.

(d)    All costs incurred by the Association in maintaining, repairing or restoring a Storage Closet shall be paid by the Proprietary Lessee to whom the Storage Closet is leased.  The Proprietary Lessee shall be responsible to perform routine sweeping and cleaning of the Storage Closet, and for compliance of the Storage Closet with all requirements of this Declaration, the By-Laws and the Proprietary Lease.

## ARTICLE V

### ALLOCATED INTERESTS; ASSESSMENTS, COMMON EXPENSES; VOTING

Section 5.1    Allocated Interests.  The Allocated Interest for each Unit (which includes each Unit's proportionate undivided interest in the Common Elements) is listed on Exhibit "B" attached hereto and made a part hereof.  The Allocated Interest assigned to each Unit is based on the historic allocation of shares to each Unit prior to the recordation hereof, and does not necessarily reflect the proportionate square footage of the Unit in relation to the total approximate square footage of all the Units.  Notwithstanding the Allocated Interests listed on Exhibit "B", the Executive Board shall have the right, without the consent of any Proprietary Lessee or holder of a Security Interest, to adjust the Allocated Interests under the following circumstances.  If any or all of Units 19G, 900F and/or 900C are incorporated into another larger contiguous Unit on the same floor, the Allocated Interest of the consolidated Unit may be reduced by the Executive Board, in its discretion, to be consistent with the Allocated Interests of Units of comparable square footage on the same or nearby floor.  The Allocated Interests of the other Units in the Building shall then be adjusted pro rata to equal one hundred percent, and this Declaration shall be amended to amend Exhibit "B".

Section 5.2    Assessments and Common Expenses.  The assessments for Common Expenses shall be determined annually, but such assessments shall be deemed to have been adopted and assessed on a monthly basis and not on an annual basis payable in monthly installments.  Any surplus assessments, in excess of the amounts required to pay the Common Expenses, shall be added to the Association's contingency reserves, in the discretion of the Board, and any excess thereafter shall be applied to the next annual assessment due from the Proprietary Lessees.

Section 5.3    Voting.  At any meeting of Proprietary Lessees, each Proprietary Lessee

Case ID: 230601242

shall be entitled to the same number of votes as equals his Unit's Allocated Interest (expressed as a decimal) multiplied by one hundred, as more fully set forth in the By-Laws.

# ARTICLE VI

## INSURANCE

Section 6.1.    <u>Insurance.</u>  The Association shall carry the insurance required by Section 4313 of the Act.  All casualty insurance carried by the Association shall cover the Common Elements, the Limited Common Elements and the Units but shall not cover (i) personal property (such as furniture or furnishings) within the individual Units, and (ii) any non-structural improvements to any Unit, located within the Unit boundaries set forth above, installed by a Proprietary Lessee.  All Proprietary Lessees shall maintain at all times casualty and liability insurance, in amounts reasonably specified by the Board from time to time, covering (i) personal property (such as furniture or furnishings) within the individual Units, (ii) fixtures and improvements, other than Common Elements, located within the Unit boundaries set forth above and installed by a Proprietary Lessee (including, without limitation, hardwood flooring and wallcoverings), (iii) any air conditioner compressor serving exclusively that Unit, regardless of where such compressors are located, and (iv) the storage locker appurtenant to that Unit, if any, and any storage closets leased from time to time by the Proprietary Lessee.

# ARTICLE VII

## RESTRICTIONS ON USE; TRANSFERS

Section 7.1    <u>Restrictions on Use Of Units.</u>  Units are restricted to use as non-transient private dwelling residences, with the sole exception of Unit 2-F which, pursuant to a resolution of the Executive Board in effect on the date hereof, may be used as a dental office until the earlier to occur of (i) the death or retirement of both Dr. Maxwell Fogel and Dr. Jack W. Magill, or (ii) any sale, gift, conveyance, lease, sublease or other transfer of the Unit or any interest therein or any right to use the Unit, at which point the Unit shall again be restricted to use as a non-transient private dwelling residence.

Section 7.2    <u>Restrictions on Transfers.</u>    Except for an assignment or transfer as security for a loan as described in Section 7.3 hereof, no Cooperative Interest shall be assigned or transferred to any person other than the Association, or the executors, administrators or other duly appointed legal representatives of the Proprietary Lessee unless and until all of the following requirements have been satisfied:

(a)    A copy of the agreement for sale and purchase ("Offer") for the transferor's Cooperative Interest, together with such information about the proposed transferee as the Association may reasonably request, shall be delivered to the Association.  Cooperative Interests sold or transferred to satisfy any lien held by the Association may be transferred without a copy of the Offer.

(b)    All sums due from the transferor Proprietary Lessee to the Association up to and including the effective date of the transfer, together with a sum to be fixed by or

Case ID: 230601242

under authority of the Executive Board to cover reasonable legal and other expenses of the Association in connection with the assignments and transfers, shall be paid to the Association.

(c)    The Association shall have given its written consent to the transfer, signed on its behalf by one or other officers or agents thereunder authorized by resolution of the Executive Board; provided, however, that such consent shall not be required (i) in case of the death of the Proprietary Lessee, for a transfer of his or her Cooperative Interest and Proprietary Lease to the spouse, child or children or parents of the deceased shareholder residing in the Unit at the time of a Proprietary Lessee's death, or a trustee of a trust of which any of the foregoing is a beneficiary, so long as such beneficiary is a resident of the Unit at the time of the Proprietary Lessee's death, or (ii) for a transfer to a personal residence trust where the beneficiaries of the trust on the date of the transfer are limited to a spouse, child or children or parents of the Proprietary Lessee residing in the Unit at the time of the transfer (provided that, if such beneficiaries do not continue to reside in the Unit at the time of the expiration or termination of the trust, the consent of the Association as set forth above shall be required for any occupancy of the Unit by any other person). Copies of all trust documents, and any subsequent amendments thereto, must be approved by the Executive Board in advance in writing. The settlor of each trust must execute and deliver to the Association a guaranty of the obligations of the trust in the form prepared by the Association.

(d)    The consent required by subsection (c) of this Section 7.2 shall be granted or refused on the basis of the desirability and financial responsibility of the assignee as a prospective Proprietary Lessee, and shall not be unreasonably refused. Any refusal of such consent may be countermanded by resolution adopted by a Majority of Proprietary Lessees at any annual or special meeting thereof duly called, the notice of which sets forth the names of the proposed transferor and assignee and the number of the Unit involved.

(e)    If the consent required by subsection (c) of this Section 7.2 shall not have been given or shall have been refused within thirty (30) days after fulfillment of all the conditions specified in subsections (a) and (b) thereof, the transferor may, by written notice given to the Association within thirty (30) days thereafter, offer his or her Cooperative Interest and Proprietary Lease to the Association for purchase at a price and on the same terms as the Offer, and in that event:

(i)    The Association shall have the right to accept such offer and purchase the offered Cooperative Interest as an entirety, together with the Proprietary Lease, at the price specified in subsection (e), out of funds legally available therefor, within four (4) months from the date of such offer, or to find another person acceptable to it who will agree to make such purchase at the same price and within the same period and who shall have delivered the documents and information required by subsection (a) of this Section 7.2;

(ii)    The transferor shall promptly execute and deliver to the Association all such new agreements of sale and purchase as may be necessary or appropriate to effectuate a purchase;

(iii)    If the Association fails to accept such offer or to find such other purchaser within the four (4) months provided, or if default shall be made by the Association or such other purchaser in consummating a purchase under the preceding subsection (i) and such default shall not be cured within ten (10) days after the written notice thereof shall have been

10

Case ID: 230601242

given to the Association by the transferor, then the transferor shall be free to sell his or her Cooperative Interest and Proprietary Lease to the rejected transferee on the terms and conditions set forth in the Offer at any time within the next succeeding six (6) months, and in such case the Association shall be deemed conclusively to have consented to such transfer and shall promptly give effect thereto, notwithstanding the provisions of subsection (c) of this Section 7.2;

(iv) If the transferor does not exercise the right of transfer given under the preceding subsection (iii) within the six (6) months therein allowed or changes in any material way the terms set forth in the Offer, the transfer of the Cooperative Interest and Proprietary Lease shall again be subject to all the restrictions provided by this Section 7.2.

Section 7.3    Security Assignment.  A Proprietary Lessee's pledge of his or her Cooperative Interest, together with an assignment of such Proprietary Lessee's Proprietary Lease, as collateral security for a loan to such shareholder by the recipient of such pledge and assignment (the "Pledgee") shall not be deemed a violation of the provisions of this Declaration relating to the transfer of such Cooperative Interest, provided, however, that only upon compliance with all of the provisions of this Declaration and the terms of such Proprietary Lease may the Pledgee or any assignee of the Pledgee have the right (x) to vote such Cooperative Interest or to acquire ownership thereof, or (y) to succeed to the interest under the Proprietary Lease of the Proprietary Lessee making such pledge and assignment, or (z) to sublet or occupy the Unit that is the subject of such Proprietary Lease.

# ARTICLE VIII

## RECORDED EASEMENTS

Section 8.1    Recorded Easements.  The Property is not subject to any recorded easements.

# ARTICLE IX

## TERMINATION

Section 9.1    Termination.  This Declaration and the By-Laws shall terminate, and the Act shall cease to apply to the Property or a portion of the Property in accordance with Section 4217 of the Act.

# ARTICLE X

## PARTITION OF COMMON ELEMENTS AND UNITS

Section 10.1    Partition of Common Elements and Units.  The Common Elements shall remain undivided, and no Proprietary Lessee may exempt himself or herself from liability with respect to the Common Expenses by waiver of the enjoyment of the right to use any of the Common Elements or by the abandonment of his or her Unit or otherwise.  There shall be no partition or division of any part of the Common Elements through judicial proceedings or

Case ID: 230601242

otherwise, except as may be permitted by the Act. A Cooperative Interest held in joint tenancy or tenancy in common may be the subject of a voluntary or judicial partition.

# ARTICLE XI

## EXECUTIVE BOARD; BY-LAWS

Section 11.1    Executive Board.  A board of nine (9) natural individuals shall be known as the Executive Board and shall manage the business, operation, and affairs of the Property on behalf of the Proprietary Lessees, in compliance with and subject to the provisions of the Act and of the By-Laws. All of the members of the Executive Board elected by the Proprietary Lessees must be residents of the Property in good standing with respect to all financial and other obligations to the Association; at least seven (7) of the nine (9) Board members must be Proprietary Lessees; and any members of the Board who are not Proprietary Lessees must be residents in the Property for at least the two (2) consecutive prior years.

Section 11.2    Complaints.  Complaints brought against the Association, the Executive Board or the officers, employees or agents thereof in their respective capacities as such, or the Cooperative as a whole, shall be directed to the Executive Board or the Association, and such complaints shall be defended by the Association. The Proprietary Lessees and the holders of mortgages on Units shall have no right to participate in such defense other than through the Association.

Section 11.3    By-Laws.  The administration, regulation and management of the Property and the Association shall be governed by the By-Laws.

# ARTICLE XII

## AMENDMENTS

Section 12.1    Amendments.  This Declaration may be amended only in accordance with Section 4216 of the Act. Each such amendment shall be effective upon the recording in the Department of Records of Philadelphia County of an appropriate instrument setting forth the amendment and its adoption, duly executed and acknowledged by the appropriate officer of the Association.

# ARTICLE XIII

## SPECIAL DECLARANT PROVISIONS

Section 13.1    Declarant and Association.  The Declarant as defined herein shall also serve as the Association for all purposes of the Act and this Declaration.

Section 13.2    Disclaimer.  Declarant hereby disclaims each and all of the following:

(a)    All development rights (as described in Section 4103 of the Act);

(b)    All special declarant rights (as described in Section 4103 of the Act);

Case ID: 230601242

(c)      All rights to maintain offices, models and signs (as described in Section 4214 of the Act);

(d)      Any period of Declarant control (as described in Section 4303(d)); and

(e)      Any right to create any new or additional Units other than through the subdivision or combination of existing Units pursuant to the Act and this Declaration.

Section 13.3    Time-share Estates.  No Unit may be converted to or owned in time-share estates.


# ARTICLE XIV

## MANDATORY PROPRIETARY LEASE PROVISIONS


Section 14.1    Mandatory Proprietary Lease Provisions.  The following provisions shall be incorporated in each and every Proprietary Lease executed hereafter by the Association and any Proprietary Lessee:

(a)      The use restrictions set forth in Section 7.1; and

(b)      The transfer restrictions set forth in Section 7.2.


# ARTICLE XV

## MISCELLANEOUS

Section 15.1    Effective Date.  This Declaration shall become effective when it has been duly entered of record in the Department of Records of Philadelphia County.

Section 15.2    Table of Contents and Headings.  The table of contents and headings herein are for reference purposes only and shall not affect the meaning or interpretation of this Declaration.

Section 15.3    Severability.  If any provisions of this Declaration are determined to be invalid, that determination shall not affect the validity or effect the remaining provisions hereof or of the By-Laws, all of which shall continue in effect as if such invalid provisions had not been included herein.

Section 15.4    Conflicts.  The Act shall control in the event of any conflict between the provisions of the Act and the provisions of this Declaration, except when the Act provides that the provisions of the Act may be modified by the provisions of the Declaration. The Declaration shall control in the case of any conflict between the provisions thereof and the provisions of any other Cooperative Document.

Case ID: 230601242

IN WITNESS WHEREOF, RITTENHOUSE PLAZA, INC. has caused this Declaration to be executed as of the day and year first above written.

RITTENHOUSE PLAZA, INC.,

a Pennsylvania corporation

(Declarant)

By: /s/ E. Gerald Riesenbach

E. Gerald Riesenbach, President

Attest: /s/ William Lederer

COMMONWEALTH OF PENNSYLVANIA :

                                : SS

CITY OF PHILADELPHIA            :

On this, the 12th day of February 1995, before me, a Notary Public, personally appeared E. GERALD RIESENBACH, who acknowledged himself to be President of RITTENHOUSE PLAZA, INC., a Pennsylvania corporation, and, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing his name as President of such corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

/s/ Joanne M. DeLeo

NOTARY PUBLIC

My term expires: May 4, 1996

Case ID: 230601242

14

Rittenhouse Plaza, Inc.
Philadelphia Pennsylvania, 19103

_Revision to Exhibit "B" Dated January 2005_

| Unit | | | Unit | | Unit | | Unit | |
|------|--------|---|------|--------|------|--------|------|--------|
|      |        |   | 6E   | 0.0076 | 11E  | 0.0080 | 16D  | 0.0109 |
|      |        |   | 6F   | 0.0065 | 11F  | 0.0070 | 16E  | 0.0080 |
| Unit |       |   | 7A   | 0.0096 | 12A  | 0.0104 | 16F  | 0.0072 |
| 2A   | 0.0089 |  | 7B   | 0.0069 | 12B  | 0.0073 | 17B  | 0.0044 |
| 2B   | 0.0069 |  | 7C   | 0.0062 | 12C  | 0.0068 | 17C  | 0.0069 |
| 2C   | 0.0057 |  | 7D   | 0.0106 | 12D  | 0.0114 | 17D  | 0.0133 |
| 2D   | 0.0100 |  | 7E   | 0.0076 | 12E  | 0.0080 | 17E  | 0.0081 |
| 2E   | 0.0070 |  | 7F   | 0.0065 | 12F  | 0.0070 | 17F  | 0.0048 |
| 2F   | 0.0060 |  | 8A   | 0.0100 | 13A  | 0.0104 | 18A  | 0.0148 |
| 3A   | 0.0094 |  | 8B   | 0.0072 | 13B  | 0.0073 | 18B  | 0.0044 |
| 3B   | 0.0065 |  | 8C   | 0.0065 | 13C  | 0.0069 | 18C  | 0.0069 |
| 3C   | 0.0058 |  | 8D   | 0.0110 | 13D  | 0.0114 | 18D  | 0.0133 |
| 3D   | 0.0102 |  | 8E   | 0.0078 | 13E  | 0.0080 | 18E  | 0.0068 |
| 3E   | 0.0072 |  | 8F   | 0.0068 | 13F  | 0.0070 | 18F  | 0.0072 |
| 3F   | 0.0061 |  | 9A   | 0.0100 | 14A  | 0.0106 | 19A  | 0.0113 |
| 4A   | 0.0092 |  | 9B   | 0.0072 | 14B  | 0.0080 | 19B  | 0.0053 |
| 4B   | 0.0066 |  | 9C   | 0.0065 | 14C  | 0.0069 | 19C  | 0.0144 |
| 4C   | 0.0060 |  | 9D   | 0.0142 | 14D  | 0.0133 | 19D  | 0.0157 |
| 4D   | 0.0102 |  | 9E   | 0.0066 | 14E  | 0.0068 | 19E  | 0.0081 |
| 4E   | 0.0073 |  | 9F   | 0.0049 | 14F  | 0.0047 | 19F  | 0.0072 |
| 4F   | 0.0062 |  | 10A  | 0.0120 | 14G  | 0.0028 | 20A  | 0.0082 |
| 5A   | 0.0096 |  | 10B  | 0.0052 | 15A  | 0.0106 | 20B  | 0.0048 |
| 5B   | 0.0069 |  | 10C  | 0.0065 | 15B  | 0.0074 | 20E  | 0.0070 |
| 5C   | 0.0062 |  | 10D  | 0.0129 | 15C  | 0.0069 | 20F  | 0.0072 |
| 5D   | 0.0126 |  | 10E  | 0.0066 | 15D  | 0.0133 | 20G  | 0.0043 |
| 5E   | 0.0061 |  | 10F  | 0.0073 | 15E  | 0.0068 | 21A  | 0.0200 |
| 5F   | 0.0065 |  | 11A  | 0.0104 | 15F  | 0.0072 | 21B  | 0.0098 |
| 6A   | 0.0096 |  | 11B  | 0.0078 | 16A  | 0.0239 | 21D  | 0.0233 |
| 6B   | 0.0069 |  | 11C  | 0.0068 | 16B  | 0.0074 | 21E  | 0.0120 |
| 6C   | 0.0062 |  | 11D  | 0.0114 | 16C  | 0.0074 |      |        |
| 6D   | 0.0106 |  |      |        |      |        |      |        |

**EXHIBIT "2"**

Case ID: 230601242



**Kaplin | Stewart**
*Attorneys at Law*

Daniel R Utain, Esquire
Direct Dial: (610) 941-2582
Direct Fax: (610) 684-2032
dutain@kaplaw.com
www.kaplaw.com

April 27, 2023

<u>**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**</u>

Rittenhouse Plaza, Inc.
Attention: Building Manager
1901 Walnut Street
Philadelphia, PA 19103

RE:    **Proprietary Lease Dated May 1, 1994 By and Between**
       <u>**Rittenhouse Plaza, Inc. and Philip Tetlock and Barbara Mellers**</u>

Dear Sir and/or Madam:

Kaplin Stewart Meloff Reiter & Stein, P.C. represents Philip Tetlock and Barbara Mellers ("**Tenants**"), the Tenants under the above-referenced "Proprietary Lease" dated May 1, 1994 ("**Lease**") by and between Tenants and Rittenhouse Plaza, Inc. ("**Association**") for the lease of Unit 21A ("**Unit**") in the building known as the Rittenhouse Plaza Apartments located at the northwest corner of 19th and Walnut Streets, Philadelphia, Pennsylvania (the "**Building**").

I am writing this letter to express Tenants' concerns with the Association's performance of its obligations in connection with the Building and the Unit.

Section 301 sets forth the Association's repair and maintenance obligations. Section 301(a) requires the Association to, among other things, repair and replace the Common Elements of the Building. Section 301(b) requires the Association to, among other things, repair and replace the Limited Common Elements of the Building.

Pursuant to Section 314 of the Lease, Tenants are entitled to the peaceful and quiet use and possession of the Unit without hindrance on the part of the Association.

As expressly noted therein, the Lease is governed by the Pennsylvania Real Estate Cooperative Act ("**Lease**"). Section 4112 of the Act imposes an express obligation of good faith in the Association's performance of all its obligations under the Lease.

**Kaplin Stewart**
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA 19422-0765
610-260-6000 tel

*Offices in*
*Pennsylvania*
1688624.1 00150574.1

Case ID: 230601242

Rittenhouse Plaza, Inc.
Attention: Building Manager
April 27, 2023
Page 2

Section 4317 of the Act requires the Association to make its records available for examination by Tenants and its agents.

As you know, it has been over twenty-one (21) months since the Building was damaged by the neighboring cement explosion. The Common Elements and Limited Common Elements surrounding and serving the Unit took the brunt of the damage, and the damage has impacted Tenants' quiet enjoyment of the Unit. However, the Association has not repaired the damage caused thereby. The Association's failure to perform the repairs constitutes a breach of their obligations under the Lease and the Act.

More importantly, the Association has failed to provide any information to the Tenants regarding the Association's plans to repair the damage. Specifically, the Association has not provided any information detailing what repairs will be made, when the proposed repairs will be made, and what impact, if any, the repairs will have on Tenants' use and enjoyment of the Unit.

Please accept this letter as Tenants' demand to inspect all records relating to the Association's plans to repair the damage caused by the explosion, including any documents exchanged with, or received from, any insurance carrier, contractor, engineer and other professional.

Please contact me within ten (10) days regarding the inspection of the requested documents. If I do not hear from you, Tenants will have no choice but to take all appropriate action to enforce their rights and remedies. I trust that will not be necessary.

**PLEASE BE GUIDED ACCORDINGLY**.

Sincerely,

**KAPLIN STEWART MELOFF REITER & STEIN, P.C.**

**By:** Daniel R Utain, Esquire

DRU:jvf

# EXHIBIT "2"

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**Name of Insuring Company(ies)**

660-1L566839                08/01/20 - 08/01/21                02/20/2025

**Policy Number(s)**          **Policy Period(s)**          **Date**

*Julie a. Senerth*

Julie A. Senerth, Manager

BI Document Management



One Tower Square, Hartford, Connecticut  06183

```
                              TRAVELERS CORP. TEL: 1-800-328-2189
                              REAL ESTATE OWNERS
                              COMMON POLICY DECLARATIONS
                              ISSUE DATE: 07/28/20
                              POLICY NUMBER: Y-660-1L566839-TIL-20
INSURING COMPANY:
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

1. NAMED INSURED AND MAILING ADDRESS:
   RITTENHOUSE PLAZA, INC.
   1901-1905 WALNUT STREET
   PHILADELPHIA, PA 19103


2. POLICY PERIOD:  From 08/01/20 to 08/01/21 12:01 A.M. Standard Time at
                                             your mailing address.
3. LOCATIONS
      Premises  Bldg.
      Loc. No.  No. Occupancy            Address

      SEE IL T0 03


4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
   COMMERCIAL GENERAL LIABILITY COV PART DECLARATIONS   CG T0 01 11 03 TIL
   EMPLOYEE BENEFITS LIABILITY COV PART DECLARATIONS    CG T0 09 09 93 TIL




5. NUMBERS OF FORMS AND ENDORSEMENTS
   FORMING A PART OF THIS POLICY:   SEE IL T8 01 10 93

6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
                          containing its complete provisions:
   Policy                     Policy No.              Insuring Company




7. PREMIUM SUMMARY:
   Provisional Premium   $ 32,550
   Due at Inception      $  3,255
   Due at Each 1 MONTH   $  3,255


NAME AND ADDRESS OF AGENT OR BROKER:        COUNTERSIGNED BY:
   WTW NORTHEAST INC (G9585)
   100 MATSONFORD RD BLDG 5                 _____
   STE 200                                  Authorized Representative
   RADNOR, PA 19087
                                            DATE:_____


IL T0 02 11 89(REV. 09-07)     PAGE 1 OF 1
OFFICE: BLUE BELL
```



**Report Claims Immediately by Calling\***
**1-800-238-6225**
*Speak directly with a claim professional*
*24 hours a day, 365 days a year*

\*Unless Your Policy Requires **Written** Notice or Reporting

## COMMERCIAL INSURANCE

### A Custom Insurance Policy Prepared for:

**RITTENHOUSE PLAZA, INC.**
**1901-1905 WALNUT STREET**
**PHILADELPHIA PA 19103**

**Presented by:  WTW NORTHEAST INC**



**TRAVELERS**

POLICY NUMBER:  Y-660-1L566839-TIL-20

EFFECTIVE DATE:  08-01-20

ISSUE DATE:  07-28-20

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
    IL T0 02 11 89    COMMON POLICY DECLARATIONS
    IL T8 01 10 93    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
    IL T0 01 01 07    COMMON POLICY CONDITIONS
    IL T0 03 04 96    LOCATION SCHEDULE
```

COMMERCIAL GENERAL LIABILITY

```
    CG T0 01 11 03    COML GENERAL LIABILITY COV PART DEC
    CG T0 07 09 87    DECLARATIONS PREMIUM SCHEDULE
    CG T0 08 11 03    KEY TO DECLARATIONS PREMIUM SCHEDULE
    CG T0 34 02 19    TABLE OF CONTENTS - COM GEN LIAB COV
    CG T1 00 02 19    COMMERCIAL GENERAL LIABILITY COV FORM
    CG D3 75 03 06    ADD'L INSUR-MORTGAGEE,ASSIGNEE,SUCCESOR
    CG 20 04 11 85    ADD'L INS - CONDOMINIUM UNIT OWNERS
    CG D2 03 12 97    AMEND-NON CUMULATION OF EACH OCC
    CG D4 67 02 19    XTEND ENDORSEMENT FOR SERVICE INDUSTRIES
    CG D2 43 01 02    FUNGI OR BACTERIA EXCLUSION
    CG D4 21 07 08    AMEND CONTRAC LIAB EXCL-EXC TO NAMED INS
    CG D6 18 10 11    EXCL-VIOLATION OF CONSUMER FIN PROT LAWS
    CG D0 76 06 93    EXCLUSION-LEAD
    CG D1 42 02 19    EXCLUSION-DISCRIMINATION
    CG F6 83 10 10    PA CHANGES - AMEND OF OCCUR DEFINITION
```

EMPLOYEE BENEFITS LIABILITY

```
    CG T0 09 09 93    EMPLOYEE BENEFITS LIAB COV PART DEC
    CG T0 43 01 16    EMPLOYEE BENEFITS LIAB TABLE OF CONTENTS
    CG T1 01 01 16    EMPLOYEE BENEFITS LIABILITY COV FORM
    CG F8 97 01 16    PENNSYLVANIA CHANGES - EBL
```

INTERLINE ENDORSEMENTS

```
    IL T3 68 01 15    FEDERAL TERRORISM RISK INS ACT DISCLOSE
    IL T4 12 03 15    AMNDT COMMON POLICY COND-PROHIBITED COVG
    IL T4 14 01 15    CAP ON LOSSES CERTIFIED ACT OF TERRORISM
    IL 00 21 09 08    NUCLEAR ENERGY LIAB EXCL END-BROAD FORM
    IL 02 46 09 07    PA CHANGES-CANCELLATION & NONRENEWAL
    IL 09 10 07 02    PENNSYLVANIA NOTICE
```

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. If a Coverage Part is cancelled, that date will become the end of the policy period as respects that Coverage Part only.

5. If this policy or any Coverage Part is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

1. The first Named Insured shown in the Declarations:

    a. Is responsible for the payment of all premiums; and

    b. Will be the payee for any return premiums we pay.

2. We compute all premiums for this policy in accordance with our rules, rates, rating plans, premiums and minimum premiums. The premium shown in the Declarations was computed based on rates and rules in effect at

TRAVELERS DOC MGMT Page 5 of 78

the time the policy was issued. On each renewal continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**F.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while

acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G. Equipment Breakdown Equivalent to Boiler and Machinery**

On the Common Policy Declarations, the term Equipment Breakdown is understood to mean and include Boiler and Machinery and the term Boiler and Machinery is understood to mean and include Equipment Breakdown.

---

This policy consists of the Common Policy Declarations and the Coverage Parts and endorsements listed in that declarations form.

In return for payment of the premium, we agree with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

One of the companies listed below (each a stock company) has executed this policy, and this policy is counter-signed by the officers listed below:

The Travelers Indemnity Company (IND)

The Phoenix Insurance Company (PHX)

The Charter Oak Fire Insurance Company (COF)

Travelers Property Casualty Company of America (TIL)

The Travelers Indemnity Company of Connecticut (TCT)

The Travelers Indemnity Company of America (TIA)

Travelers Casualty Insurance Company of America (ACJ)

Secretary                                              President

Page 2 of 2      Includes the copyrighted material of Insurance Services Office, Inc. with its permission.   **IL T0 01 01 07**  (Rev. 09-18)

TRAVELERS DOC MGMT Page 6 of 78

**LOCATION SCHEDULE**                    **POLICY NUMBER:** Y-660-1L566839-TIL-20

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
08-01-20 to 08-01-21.

| Loc. No. | Bldg. No. | Address | Occupancy |
|----------|-----------|---------|-----------|
| 1 | 1 | 1901-1905 WALNUT STREET PHILADELPHIA, PA 19103 | MAIN |

**IL T0 03 04 96**                                    Page   1  (END)

# GENERAL LIABILITY

# GENERAL LIABILITY


**TRAVELERS**

One Tower Square, Hartford, Connecticut  06183

**COMMERCIAL GENERAL LIABILITY
COVERAGE PART DECLARATIONS**

**POLICY NO.:** Y-660-1L566839-TIL-20
**ISSUE DATE:** 07-28-20

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**DECLARATIONS PERIOD:**  From 08-01-20  to  08-01-21  12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial General Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

1. **COVERAGE AND LIMITS OF INSURANCE:**

| COMMERCIAL GENERAL LIABILITY COVERAGE FORM | LIMITS OF INSURANCE |
|---|---|
| General Aggregate Limit (Other than Products-Completed Operations) | $  2,000,000 |
| Products-Completed Operations Aggregate Limit | $  2,000,000 |
| Personal & Advertising Injury Limit | $  1,000,000 |
| Each Occurrence Limit | $  1,000,000 |
| Damage To Premises Rented To You Limit (any one premises) | $    300,000 |
| Medical Expense Limit (any one person) | $      5,000 |

2. **AUDIT PERIOD:** NONE

3. **FORM OF BUSINESS:** CORPORATION

4. **NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

## COMMERCIAL GENERAL LIABILITY COVERAGE IS SUBJECT TO A GENERAL AGGREGATE LIMIT

CG T0 01 11 03

Page 1 of 1

PRODUCER: WTW NORTHEAST INC          G9585          OFFICE: BLUE BELL          06Z

**DECLARATIONS PREMIUM SCHEDULE**     **POLICY NUMBER:** `Y-660-1L566839-TIL-20`

This Schedule applies to the Declarations for the period of     `08-01-20`  to  `08-01-21`

It shows all of your known rating classes as of the effective date.  Any exceptions will be so noted.  This includes all locations you own, rent or occupy.

| OPN NO. | LOC/ BLDG NO. | CLASS DESCRIPT/ CODE NO. | SUBLINE | PREMIUM BASE/ EXPOSURE | RATES | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| MINIMUM PREMIUMS | | | | | | |
| | | PREM/OPS | | $230 | | |
| | | LOB | | $250 | | |
| | 1/  1 | APARTMENT BUILDINGS PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT. | | | | |
| 002 | | 60010 | PREM/OPS | U          118 | 246.594 | 29,098 |
| | 1/  1 | BUILDINGS OR PREMISES - BANK OR OFFICE - MERCANTILE OR MANUFACTURING (LESSOR'S RISK ONLY) - MAINTAINED BY THE INSURED - OTHER THAN NOT-FOR-PROFIT PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT. | | | | |
| 003 | | 61217 | PREM/OPS | A       10,000 | 315.186 | 3,152 |
| | | COVERAGE PART TOTAL | | | | 32,250 |

*This class is subject to the prem/ops transition program.

☐ If an "X" is entered in this box, these Declarations are completed on the Premium Schedule Extension CG     T0 12.

**CG T0 07 09 87**                                    PAGE     1  (END)

**KEY TO DECLARATIONS PREMIUM SCHEDULE**

**ABBREVIATIONS:**

CLASS DESCRIPT  – means CLASS DESCRIPTION

LOC/BLDG NO.  – means LOCATION/BUILDING NUMBER

OPN NO.  – means OPERATION NUMBER

PREM/OPS  – means PREMISES/OPERATIONS

PROD/C-OPS  – means PRODUCTS/COMPLETED OPERATIONS

**PREMIUM BASE:**

| Key Letter | Premium Base | How Rates Apply |
|---|---|---|
| a | Area | per 1,000 square feet |
| c | Total Cost | per $1,000 of total cost |
| m | Admissions | per 1,000 admissions |
| o | Total Operating Expense | per $1,000 of total operating   expenditures |
| p | Payroll | per $1,000 of payroll |
| s | Gross Sales | per $1,000 of gross sales |
| t | (see note* below) | (see note* below) |
| u | Units | per unit |

*    Premium base t applies for a number o f rarely used premium bases.
     The specific base and how rates apply  are shown with the Class Description
     on the DECLARATIONS-PREMIUM  SCHEDULE.

**CG T0 08 11 03**        Copyright, The Travelers Indemnity Company,   2003        Page 1 of 1

## TABLE OF CONTENTS

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG T1 00 02 19

SECTION I – COVERAGES                                                           Beginning on Page

Coverage A –
**Bodily Injury and Property Damage Liability**        Insuring Agreement ........................................................   1

Exclusions ...................................................................   2

Coverage B –
**Personal and Advertising Injury Liability**          Insuring Agreement ......................................................   6

Exclusions ...................................................................   6

Coverage C –
**Medical Payments**                                   Insuring Agreement ......................................................   9

Exclusions ...................................................................   9

Supplementary Payments ................................................................................. 10

SECTION II – WHO IS AN INSURED .......................................................................... 11

SECTION III – LIMITS OF INSURANCE ..................................................................... 13

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS ........................................ 13

Bankruptcy ............................................................................................ 13
Duties In The Event Of Occurrence, Offense, Claim Or Suit ................................. 13
Legal Action Against Us ........................................................................... 14
Other Insurance ..................................................................................... 15
Premium Audit ....................................................................................... 16
Representations ..................................................................................... 16
Separation Of Insureds ............................................................................ 16
Transfer Of Rights Of Recovery Against Others To Us ....................................... 16
When We Do Not Renew ............................................................................ 16

SECTION V – DEFINITIONS .................................................................................... 16

CG T0 34 02 19

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "bodily injury" or "property damage", provided that:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG T1 00 02 19**

is used to heat, cool or dehumidify the building, or produced by or originating from equipment that is used to heat water for personal use by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) If such "pollutants" are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed

to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are or were at any time performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** 50 feet long or less; and

**(b)** Not being used to carry any person or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify as "mobile equipment" under the definition of "mobile equipment" if such land vehicle were not subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment"; or

**(6)** An aircraft that is:

**(a)** Chartered with a pilot to any insured;

**(b)** Not owned by any insured; and

**(c)** Not being used to carry any person or property for a charge.

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage" arising out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "premises damage". A separate limit of insurance applies to "premises damage" as described in Paragraph **6.** of Section **III –** Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

However, this exclusion does not apply to liability for damages because of "bodily injury".

**q. Unsolicited Communication**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

**r. Access Or Disclosure Of Confidential Or Personal Information**

"Bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**s. Asbestos**

**(1)** "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the "bodily injury" or "property damage" is caused or contributed to by the hazardous properties of asbestos.

COMMERCIAL GENERAL LIABILITY

**(2)** "Bodily injury" or "property damage" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, and that are part of any claim or "suit" which also alleges any "bodily injury" or "property damage" described in Paragraph **(1)** above.

**(3)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, asbestos, asbestos fibers or products containing asbestos; or

**(b)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, asbestos fibers or products containing asbestos.

**t.** **Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practice, policy, act or omission, such as coercion, demotion, evaluation, reassignment, discipline, failure to promote or advance, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment applied to or directed at that person, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the

employment-related practices described in Paragraph **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "bodily injury".

Exclusions **c.** through **n.** do not apply to "premises damage". A separate limit of insurance applies to "premises damage" as described in Paragraph **6.** of Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.** **Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.** **Exclusions**

This insurance does not apply to:

**a.** **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This exclusion does not apply to "personal injury" caused by malicious prosecution.

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Or Used Prior To Policy Period**

(1) "Personal and advertising injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period; or

(2) "Advertising injury" arising out of infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Because of "personal injury" assumed by you in a contract or agreement that is an "insured contract", provided that the "personal injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal injury", provided that:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party

against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**f. Breach Of Contract**

"Advertising injury" arising out of a breach of contract.

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Intellectual Property**

"Personal and advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

(1) Copyright;

(2) Patent;

(3) Trade dress;

(4) Trade name;

(5) Trademark;

(6) Trade secret; or

(7) Other intellectual property rights or laws.

This exclusion does not apply to:

(1) "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

(2) Any other "personal and advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" caused by an offense committed by an insured whose business is:

(1) Advertising, "broadcasting" or publishing;

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **a.(1)**, **(2)** and **(3)** of the definition of "personal injury".

For the purposes of this exclusion:

**(1)** Creating and producing correspondence written in the conduct of your business, bulletins, financial or annual reports, or newsletters about your goods, products or services will not be considered the business of publishing; and

**(2)** The placing of frames, borders or links, or advertising, for you or others anywhere on the Internet will not, by itself, be considered the business of advertising, "broadcasting" or publishing.

**k.** **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts or owns, or over which the insured exercises control.

**l.** **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.** **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.** **Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or

neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.** **War**

"Personal and advertising injury" arising out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.** **Unsolicited Communication**

"Personal and advertising injury" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

**q.** **Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

**r.** **Asbestos**

**(1)** "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the "personal and advertising injury" is caused or contributed to by the hazardous properties of asbestos.

**(2)** "Personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis, chemicals and waste, and that are part of any claim or "suit" which also alleges any "personal and advertising injury" described in Paragraph **(1)** above.

**(3)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG T1 00 02 19

assess the effects of, asbestos, asbestos fibers or products containing asbestos; or

**(b)** Claim or suit by or on behalf of any governmental authority or any other person or organization because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, asbestos, asbestos fibers or products containing asbestos.

**s. Employment-Related Practices**

"Personal injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practice, policy, act or omission, such as coercion, demotion, evaluation, reassignment, discipline, failure to promote or advance, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or imprisonment applied to or directed at that person, regardless of whether such practice, policy, act or omission occurs, is applied or is committed before, during or after the time of that person's employment; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraph **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "personal injury".

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**SUPPLEMENTARY PAYMENTS**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

   **(1)** Agrees in writing to:

   **(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

   **(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   **(c)** Notify any other insurer whose coverage is available to the indemnitee; and

   **(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **(2)** Provides us with written authorization to:

   **(a)** Obtain records and other information related to the "suit"; and

   **(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverages – Coverage **A** – Bodily Injury And Property Damage Liability or Paragraph **2.e.** of Section **I** – Coverages – Coverage **B** – Personal And Advertising Injury Liability, such payments will not be deemed to be damages for "bodily injury", "property damage" or "personal injury", and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**a.** We have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

Unless you are in the business or occupation of providing professional health care services, Paragraphs **(1)(a)**, **(b)**, **(c)** and **(d)** above do not apply to "bodily injury" arising out of providing or failing to provide first aid or "Good Samaritan services" by any of your "employees" or "volunteer workers", other than an employed or volunteer doctor. Any such "employees" or "volunteer workers" providing or failing to provide first aid or "Good Samaritan services" during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization, while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**e.** Any person or organization that, with your express or implied consent, either uses or is responsible for the use of a watercraft that you do not own that is:

**(1)** 50 feet long or less; and

**(2)** Not being used to carry any person or property for a charge.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and of which you are the sole owner or in which you maintain an ownership interest of more than 50%, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

For the purposes of Paragraph **1.** of Section II – Who Is An Insured, each such organization will be deemed to be designated in the Declarations as:

**a.** An organization, other than a partnership, joint venture or limited liability company; or

**b.** A trust;

as indicated in its name or the documents that govern its structure.

**4.** Any person or organization that is a premises owner, manager or lessor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" that:

**a.** Is "bodily injury" or "property damage" that occurs, or is "personal and advertising injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement; and

**b.** Arises out of the ownership, maintenance or use of that part of any premises leased to you.

The insurance provided to such premises owner, manager or lessor is subject to the following provisions:

**a.** The limits of insurance provided to such premises owner, manager or lessor will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

**b.** The insurance provided to such premises owner, manager or lessor does not apply to:

**(1)** Any "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense that is committed, after you cease to be a tenant in that premises; or

**(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such premises owner, manager or lessor.

**5.** Any person or organization that is an equipment lessor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" that:

**a.** Is "bodily injury" or "property damage" that occurs, or is "personal and advertising injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement; and

**b.** Is caused, in whole or in part, by your acts or omissions in the maintenance, operation or use of equipment leased to you by such equipment lessor.

The insurance provided to such equipment lessor is subject to the following provisions:

**a.** The limits of insurance provided to such equipment lessor will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

**b.** The insurance provided to such equipment lessor does not apply to any "bodily injury" or "property damage" that occurs, or "personal and advertising injury" caused by an offense that is committed, after the equipment lease expires.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

venture or limited liability company that is not shown as a Named Insured in the Declarations. This paragraph does not apply to any such partnership, joint venture or limited liability company that otherwise qualifies as an insured under Section **II – Who Is An Insured.**

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal injury" and "advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**;

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

   For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in providing or failing to provide first aid or "Good Samaritan services" to any one person will be deemed to be one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "premises damage" to any one premises. The Damage To Premises Rented To You Limit will be:

   a. The amount shown for the Damage To Premises Rented To You Limit in the Declarations of this Coverage Part; or

   b. $300,000 if no amount is shown for the Damage To Premises Rented To You Limit in the Declarations of this Coverage Part.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

COMMERCIAL GENERAL LIABILITY

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**e.** The following provisions apply to Paragraph **a.** above, but only for purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph **1.** or **2.** of Section **II** – Who Is An Insured:

**(1)** Notice to us of such "occurrence" or offense must be given as soon as practicable only after the "occurrence" or offense is known to you (if you are an individual), any of your partners or members who is an individual (if you are a partnership or joint venture), any of your managers who is an individual (if you are a limited liability company), any of your "executive officers" or directors (if you are an organization other than a partnership, joint venture, or limited liability company), any of your trustees who is an individual (if you are a trust) or any "employee" authorized by you to give notice of an "occurrence" or offense.

**(2)** If you are a partnership, joint venture, limited liability company or trust, and none of your partners, joint venture members, managers or trustees are individuals, notice to us of such "occurrence" or offense must be given as soon as practicable only after the "occurrence" or offense is known by:

**(a)** Any individual who is:

**(i)** A partner or member of any partnership or joint venture;

**(ii)** A manager of any limited liability company;

**(iii)** An executive officer or director of any other organization; or

**(iv)** A trustee of any trust;

that is your partner, joint venture member, manager or trustee; or

**(b)** Any employee authorized by such partnership, joint venture, limited liability company, trust or other organization to give notice of an "occurrence" or offense.

**(3)** Notice to us of such "occurrence" or offense will be deemed to be given as soon as practicable if it is given in good faith as soon as practicable to your workers' compensation insurer. This applies only if you subsequently give notice to us of the "occurrence" or offense as soon as practicable after any of the persons described in Paragraph **e.(1)** or **(2)** above discovers that the "occurrence" or offense may result in sums to which the insurance provided under this Coverage Part may apply.

However, if this policy includes an endorsement that provides limited coverage for "bodily injury" or "property damage" or pollution costs arising out of a discharge, release or escape of "pollutants" which contains a requirement that the discharge, release or escape of "pollutants" must be reported to us within a specific number of days after its abrupt commencement, this Paragraph **e.** does not affect that requirement.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**4. Other Insurance**

If valid and collectible other insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(i)** Another insurance company;

**(ii)** Us or any of our affiliated insurance companies, except when the Non cumulation of Each Occurrence Limit provision of Paragraph **5.** of Section **III** – Limits Of Insurance or the Non cumulation of Personal and Advertising Injury Limit provision of Paragraph **4.** of Section **III** – Limits of Insurance applies because the Amendment – Non Cumulation Of Each Occurrence Limit Of Liability And Non Cumulation Of Personal And Advertising Injury Limit endorsement is included in this policy;

**(iii)** Any risk retention group; or

**(iv)** Any self-insurance method or program, in which case the insured will be deemed to be the provider of other insurance.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

As used anywhere in this Coverage Part, other insurer means a provider of other insurance. As used in Paragraph **c.** below, insurer means a provider of insurance.

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below, except when Paragraph **d.** below applies.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is insurance for "premises damage";

**(iii)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to any exclusion in this Coverage Part that applies to aircraft, "autos" or watercraft;

**(iv)** That is insurance available to a premises owner, manager or lessor that qualifies as an insured under Paragraph **4.** of Section **II** – Who Is An Insured, except when Paragraph **d.** below applies; or

**(v)** That is insurance available to an equipment lessor that qualifies as an insured under Paragraph **5.** of Section **II** – Who Is An Insured, except when Paragraph **d.** below applies.

**(b)** Any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is an additional insured, or is any other insured that does not qualify as a named insured, under such other insurance.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

COMMERCIAL GENERAL LIABILITY

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**d. Primary And Non-Contributory Insurance If Required By Written Contract**

If you specifically agree in a written contract or agreement that the insurance afforded to an insured under this Coverage Part must apply on a primary basis, or a primary and non-contributory basis, this insurance is primary to other insurance that is available to such insured which covers such insured as a named insured, and we will not share with that other insurance, provided that:

**(1)** The "bodily injury" or "property damage" for which coverage is sought occurs; and

**(2)** The "personal and advertising injury" for which coverage is sought is caused by an offense that is committed;

subsequent to the signing of that contract or agreement by you.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**2.** "Advertising injury":

**a.** Means injury caused by one or more of the following offenses:

**(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

**(2)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

**(a)** Appropriates a person's name, voice, photograph or likeness; or

**(b)** Unreasonably places a person in a false light; or

**(3)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means:

**a.** Physical harm, including sickness or disease, sustained by a person; or

**b.** Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

**5.** "Broadcasting" means transmitting any audio or visual material for any purpose:

**a.** By radio or television; or

**b.** In, by or with any other electronic means of communication, such as the Internet, if that material is part of:

**(1)** Radio or television programming being transmitted;

**(2)** Other entertainment, educational, instructional, music or news programming being transmitted; or

**(3)** Advertising transmitted with any of such programming.

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in Paragraph **a.** above, or in a settlement we agree to.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**10.** "Good Samaritan services" means any emergency medical services for which no compensation is demanded or received.

**11.** "Hostile fire" means a fire which becomes uncontrollable or breaks out from where it was intended to be.

**12.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**13.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "premises damage" is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle,

tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities.

**14.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**15.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**16.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   **(1)** Power cranes, shovels, loaders, diggers or drills; or

   **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   **(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

   **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged. Such land vehicles are considered "autos".

**17.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** An act or omission committed in providing or failing to provide first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

**18.** "Personal and advertising injury" means "personal injury" or "advertising injury".

**19.** "Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

   **(1)** False arrest, detention or imprisonment;

   **(2)** Malicious prosecution;

   **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

   **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

   **(5)** Oral or written publication, including publication by electronic means, of material that:

      **(a)** Appropriates a person's name, voice, photograph or likeness; or

      **(b)** Unreasonably places a person in a false light.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

**20.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

 © 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**21.** "Premises damage" means:

**a.** With respect to the first paragraph of the exceptions in Exclusion **j.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, "property damage" to any premises while rented to you for a period of seven or fewer consecutive days, including the contents of such premises; or

**b.** With respect to the exception to Exclusions **c.** through **n.** in the last paragraph of Paragraph **2.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, "property damage" to any premises while rented to you for a period of more than seven consecutive days, or while temporarily occupied by you with permission of the owner, caused by:

**(1)** Fire;

**(2)** Explosion;

**(3)** Lightning;

**(4)** Smoke resulting from fire, explosion or lightning; or

**(5)** Water.

But "premises damage" under this Paragraph **b.** does not include "property damage" to any premises caused by:

**(1)** Rupture, bursting, or operation of pressure relief devices;

**(2)** Rupture or bursting due to expansion or swelling of the contents of any building or structure caused by or resulting from water; or

**(3)** Explosion of steam boilers, steam pipes, steam engines or steam turbines.

**22.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your

contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**23.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**24.** "Slogan":

**a.** Means a phrase that others use for the purpose of attracting attention in their advertising.

**b.** Does not include a phrase used as, or in, the name of:

**(1)** Any person or organization, other than you; or

**(2)** Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
CG T1 00 02 19

25. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

26. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

27. "Title" means a name of a literary or artistic work.

28. "Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

29. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

30. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      (2) The providing of or failure to provide warnings or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

31. "Your work":

   a. Means:

      (1) Work or operations performed by you or on your behalf; and

      (2) Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      (2) The providing of or failure to provide warnings or instructions.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**NAME OF PERSON OR ORGANIZATION:**

Any mortgagee, assignee, successor or receiver with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only for the limits which you agreed to provide in the written contract, or the limits shown on the Declarations, whichever are less. However, coverage for any such mortgagee, assignee, successor or receiver will cease as of the date during the policy period when such con    tract is no longer in effect.

**DESIGNATION OF PREMISES:**

Any premises for which any mortgagee, assignee, successor or receiver is requ ired to be named as an additional insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, successor or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONDOMINIUM UNIT OWNERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**1.** Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

**2.** Paragraph 4 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

Non cumulation of Personal and Advertising Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# XTEND ENDORSEMENT FOR SERVICE INDUSTRIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

**A.** Who Is An Insured – Unnamed Subsidiaries

**B.** Who Is An Insured – Employees And Volunteer Workers – Bodily Injury To Co-Employees And Co-Volunteer Workers

**C.** Who Is An Insured – Newly Acquired Or Formed Limited Liability Companies

**D.** Blanket Additional Insured – Broad Form Vendors

**E.** Blanket Additional Insured – Controlling Interest

**F.** Blanket Additional Insured – Mortgagees, Assignees, Successors Or Receivers

**G.** Blanket Additional Insured – Governmental Entities – Permits Or Authorizations Relating To Premises

**H.** Blanket Additional Insured – Governmental Entities – Permits Or Authorizations Relating To Operations

**I.** Blanket Additional Insured – Grantors Of Franchises

**J.** Incidental Medical Malpractice

**K.** Blanket Waiver Of Subrogation

## PROVISIONS

**A. WHO IS AN INSURED – UNNAMED SUBSIDIARIES**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any of your subsidiaries, other than a partnership or joint venture, that is not shown as a Named Insured in the Declarations is a Named Insured if:

**a.** You are the sole owner of, or maintain an ownership interest of more than 50% in, such subsidiary on the first day of the policy period; and

**b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal and advertising injury" caused by an offense committed:

**a.** Before you maintained an ownership interest of more than 50% in such subsidiary; or

**b.** After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

For purposes of Paragraph **1.** of Section **II** – Who Is An Insured, each such subsidiary will be deemed to be designated in the Declarations as:

**a.** A limited liability company;

**b.** An organization other than a partnership, joint venture or limited liability company; or

**c.** A trust;

as indicated in its name or the documents that govern its structure.

**B. WHO IS AN INSURED – EMPLOYEES AND VOLUNTEER WORKERS – BODILY INJURY TO CO-EMPLOYEES AND CO-VOLUNTEER WORKERS**

The following is added to Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED**:

Paragraphs **(1)(a)**, **(b)** and **(c)** above do not apply to "bodily injury" to a co-"employee" while in the course of the co-"employee's" employment by you or performing duties related to the conduct of your business, or to "bodily injury" to

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

your other "volunteer workers" while performing duties related to the conduct of your business.

**C. WHO IS AN INSURED – NEWLY ACQUIRED OR FORMED LIMITED LIABILITY COMPANIES**

The following replaces Paragraph **3.** of **SECTION II – WHO IS AN INSURED**:

**3.** Any organization you newly acquire or form, other than a partnership or joint venture, and of which you are the sole owner or in which you maintain an ownership interest of more than 50%, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only:

**(1)** Until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, if you do not report such organization in writing to us within 180 days after you acquire or form it; or

**(2)** Until the end of the policy period, when that date is later than 180 days after you acquire or form such organization, if you report such organization in writing to us within 180 days after you acquire or form it;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

For the purposes of Paragraph **1.** of Section **II – Who Is An Insured**, each such organization will be deemed to be designated in the Declarations as:

**a.** A limited liability company;

**b.** An organization, other than a partnership, joint venture or limited liability company; or

**c.** A trust;

as indicated in its name or the documents that govern its structure.

**D. BLANKET ADDITIONAL INSURED – BROAD FORM VENDORS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any person or organization that is a vendor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" that:

**a.** Occurs subsequent to the signing of that contract or agreement; and

**b.** Arises out of "your products" that are distributed or sold in the regular course of such vendor's business.

The insurance provided to such vendor is subject to the following provisions:

**a.** The limits of insurance provided to such vendor will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

**b.** The insurance provided to such vendor does not apply to:

**(1)** Any express warranty not authorized by you or any distribution or sale for a purpose not authorized by you;

**(2)** Any change in "your products" made by such vendor;

**(3)** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**(4)** Any failure to make such inspections, adjustments, tests or servicing as vendors agree to perform or normally undertake to perform in the regular course of business, in connection with the distribution or sale of "your products";

**(5)** Demonstration, installation, servicing or repair operations, except such operations performed at such vendor's premises in connection with the sale of "your products"; or

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG D4 67 02 19**

(6) "Your products" that, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or on behalf of such vendor.

Coverage under this provision does not apply to:

a. Any person or organization from whom you have acquired "your products", or any ingredient, part or container entering into, accompanying or containing such products; or

b. Any vendor for which coverage as an additional insured specifically is scheduled by endorsement.

E. BLANKET ADDITIONAL INSURED – CONTROLLING INTEREST

1. The following is added to SECTION II – WHO IS AN INSURED:

Any person or organization that has financial control of you is an insured with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" that arises out of:

a. Such financial control; or

b. Such person's or organization's ownership, maintenance or use of premises leased to or occupied by you.

The insurance provided to such person or organization does not apply to structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

2. The following is added to Paragraph 4. of SECTION II – WHO IS AN INSURED:

This paragraph does not apply to any premises owner, manager or lessor that has financial control of you.

F. BLANKET ADDITIONAL INSURED – MORTGAGEES, ASSIGNEES, SUCCESSORS OR RECEIVERS

The following is added to SECTION II – WHO IS AN INSURED:

Any person or organization that is a mortgagee, assignee, successor or receiver and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to its liability as mortgagee, assignee, successor or receiver for "bodily injury", "property damage" or "personal and advertising injury" that:

a. Is "bodily injury" or "property damage" that occurs, or is "personal and advertising injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement; and

b. Arises out of the ownership, maintenance or use of the premises for which that mortgagee, assignee, successor or receiver is required under that contract or agreement to be included as an additional insured on this Coverage Part.

The insurance provided to such mortgagee, assignee, successor or receiver is subject to the following provisions:

a. The limits of insurance provided to such mortgagee, assignee, successor or receiver will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

b. The insurance provided to such person or organization does not apply to:

(1) Any "bodily injury" or "property damage" that occurs, or any "personal and advertising injury" caused by an offense that is committed, after such contract or agreement is no longer in effect; or

(2) Any "bodily injury", "property damage" or "personal and advertising injury" arising out of any structural alterations, new construction or demolition operations performed by or on behalf of such mortgagee, assignee, successor or receiver.

G. BLANKET ADDITIONAL INSURED – GOVERNMENTAL ENTITIES – PERMITS OR AUTHORIZATIONS RELATING TO PREMISES

The following is added to SECTION II – WHO IS AN INSURED:

Any governmental entity that has issued a permit or authorization with respect to premises owned or occupied by, or rented or loaned to, you and that you are required by any ordinance, law, building code or written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of the existence, ownership, use, maintenance, repair, construction, erection or removal of any of the following for which that governmental entity has issued such permit or authorization: advertising signs, awnings,

      © 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, elevators, street banners or decorations.

**H. BLANKET ADDITIONAL INSURED – GOVERNMENTAL ENTITIES – PERMITS OR AUTHORIZATIONS RELATING TO OPERATIONS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any governmental entity that has issued a permit or authorization with respect to operations performed by you or on your behalf and that you are required by any ordinance, law, building code or written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of such operations.

The insurance provided to such governmental entity does not apply to:

**a.** Any "bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the governmental entity; or

**b.** Any "bodily injury" or "property damage" included in the "products-completed operations hazard".

**I. BLANKET ADDITIONAL INSURED – GRANTORS OF FRANCHISES**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any person or organization that grants a franchise to you is an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of your operations in the franchise granted by that person or organization.

If a written contract or agreement exists between you and such additional insured, the limits of insurance provided to such insured will be the minimum limits that you agreed to provide in the written contract or agreement, or the limits shown in the Declarations, whichever are less.

**J. INCIDENTAL MEDICAL MALPRACTICE**

**1.** The following replaces Paragraph **b.** of the definition of "occurrence" in the **DEFINITIONS** Section:

**b.** An act or omission committed in providing or failing to provide "incidental

medical services", first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

**2.** The following replaces the last paragraph of Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED**:

Unless you are in the business or occupation of providing professional health care services, Paragraphs **(1)(a)**, **(b)**, **(c)** and **(d)** above do not apply to "bodily injury" arising out of providing or failing to provide:

**(a)** "Incidental medical services" by any of your "employees" who is a nurse, nurse assistant, emergency medical technician, paramedic, athletic trainer, audiologist, dietician, nutritionist, occupational therapist or occupational therapy assistant, physical therapist or speech-language pathologist; or

**(b)** First aid or "Good Samaritan services" by any of your "employees" or "volunteer workers", other than an employed or volunteer doctor. Any such "employees" or "volunteer workers" providing or failing to provide first aid or "Good Samaritan services" during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

**3.** The following replaces the last sentence of Paragraph **5.** of **SECTION III – LIMITS OF INSURANCE**:

For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to any one person will be deemed to be one "occurrence".

**4.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Sale Of Pharmaceuticals**

"Bodily injury" or "property damage" arising out of the violation of a penal statute or ordinance relating to the sale of pharmaceuticals committed by, or with the knowledge or consent of, the insured.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**CG D4 67 02 19**

COMMERCIAL GENERAL LIABILITY

5. The following is added to the **DEFINITIONS** Section:

"Incidental medical services" means:

a. Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages; or

b. The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances.

6. The following is added to Paragraph **4.b.**, **Excess Insurance**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

This insurance is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to any of your "employees" for "bodily injury" that arises out of providing or failing to provide "incidental medical services" to any person to the extent not subject to Paragraph **2.a.(1)** of Section **II –** Who Is An Insured.

K. **BLANKET WAIVER OF SUBROGATION**

The following is added to Paragraph **8.**, **Transfer Of Rights Of Recovery Against Others To Us**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of:

a. "Bodily injury" or "property damage" that occurs; or

b. "Personal and advertising injury" caused by an offense that is committed;

subsequent to the execution of the contract or agreement.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions **of Section I – Coverage A – Bodily Injury And Property Damage**:

**2. Exclusions**

This insurance does not apply to :

**Fungi or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to :

**Fungi or Bacteria**

**a.** "Personal injury" or "advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

                   Copyright, The Travelers Indemnity Company, 2002
Includes copyrighted material of Insurance Services Office

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION – EXCEPTION FOR DAMAGES ASSUMED IN AN INSURED CONTRACT APPLIES ONLY TO NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1.  The following replaces Paragraph **(2)** of Exclusion **b.**, **Contractual Liability**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

    **(2)** Assumed by you in a contract or agreement that is an "insured contract", provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "bodily injury" or "property damage", provided that:

    **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

    **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

2.  The following replaces the beginning of Paragraph **2.**, and Paragraphs **2.a.**, **b.**, **c.**, **d.** and **e.**, of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** of **SECTION I – COVERAGES**:

    **2.** If we defend you against a "suit" and your indemnitee is also named as a party to the "suit", we will have the right and duty to defend that indemnitee if all of the following conditions are met:

    **a.** The "suit" against the indemnitee seeks damages for which you have assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

    **b.** This insurance applies to such liability assumed by you;

    **c.** The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by you in the same "insured contract";

    **d.** The allegations in the "suit" and the information we know about the "occurrence" or offense are such that we determine that no conflict exists between your interests and the interests of the indemnitee;

    **e.** You and the indemnitee ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend you and the indemnitee; and

3.  The following replaces the last sentence of Paragraph **2.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** of **SECTION I – COVERAGES**:

    Our obligation to defend your indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

    **a.** We have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses; or

    **b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© 2008 The Travelers Companies, Inc.
Includes the copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   **Violation Of Consumer Financial Protection Laws**

   "Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

   **Violation Of Consumer Financial Protection Laws**

   "Personal injury" or "advertising injury" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such violation.

3. The following is added to the **DEFINITIONS** Section:

"Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

   **a.** Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

   **b.** Information bearing on a person's credit worthiness, credit standing or credit capacity.

   **c.** Social security number.

   **d.** Drivers license number.

   **e.** Birth date.

"Consumer financial protection law" means:

   **a.** The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

   **b.** California's Song-Beverly Credit Card Act and any of its amendments; or

   **c.** Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> CATASTROPHE UMBRELLA POLICY

**PROVISIONS**

This insurance does not apply to any injury, damage, loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead compounds or lead which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

1.  Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

2.  Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such injury or damage, loss, cost, payment or expense; or

3.  Any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of lead, lead compounds or materials or substances containing lead.

CG D0 76 06 93

Page 1 of 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – COVERAGES – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Discrimination**

"Bodily injury" arising out of discrimination based upon a person's sex, sexual orientation, marital status, pregnancy, race, color, creed, religion, national origin, citizenship, veteran status, age, genetic information or physical or mental disability, or any other characteristic, attribute, trait, condition or status that qualifies a person for protection against discrimination under federal, state or local law.

**2.** The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – COVERAGES – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Discrimination**

"Personal injury" arising out of discrimination based upon a person's sex, sexual orientation, marital status, pregnancy, race, color, creed, religion, national origin, citizenship, veteran status, age, genetic information or physical or mental disability, or any other characteristic, attribute, trait, condition or status that qualifies a person for protection against discrimination under federal, state or local law.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – AMENDMENT OF OCCURRENCE DEFINITION FOR RESULTING PROPERTY DAMAGE ARISING OUT OF YOUR PRODUCT OR YOUR WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following replaces the definition of "occurrence" in the **DEFINITIONS** Section, but only for the purpose of determining whether "resulting property damage arising out of your product" or "resulting property damage arising out of your work" is caused by an "occurrence":

"Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

**b.** An act or omission, including all related acts or omissions, that causes "resulting property damage arising out of your product" or "resulting property damage arising out of your work".

**2.** The following is added to the **DEFINITIONS** Section:

"Resulting property damage arising out of your product" means "property damage" that:

**a.** Is neither expected nor intended from the standpoint of the insured;

**b.** Is to property other than "your product"; and

**c.** Arises out of "your product" or any part of it.

"Resulting property damage arising out of your work" means "property damage" that:

**a.** Is neither expected nor intended from the standpoint of the insured;

**b.** Is to property other than "your work"; and

**c.** Arises out of "your work" or any part of it and is included in the "products-completed operations hazard".

© 2010 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# EMPLOYEE BENEFITS LIABILITY

# EMPLOYEE BENEFITS LIABILITY



One Tower Square, Hartford, Connecticut 06183

**EMPLOYEE BENEFITS LIABILITY**
**COVERAGE PART DECLARATIONS**

**POLICY NO.:** Y-660-1L566839-TIL-20
**ISSUE DATE:** 07-28-20

**INSURING COMPANY:**
TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

**DECLARATIONS PERIOD:** From 08-01-20 to 08-01-21 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Employee Benefits Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

**1. COVERAGE AND LIMITS OF INSURANCE**

| Employee Benefits Liability Coverage Form | Limits of Insurance |
|---|---|
| Aggregate Limit | $ 2,000,000 |
| Each Employee Limit | $ 1,000,000 |

**2. AUDIT PERIOD:** NONE

**3. FORM OF BUSINESS:** CORPORATION

**4. RETROACTIVE DATE:**

This insurance does not apply to negligent acts, errors or omissions which occurred before the Retroactive Date, if any shown below.

Retroactive Date: 08-01-2018

**5. EMPLOYEE BENEFIT PROGRAMS OTHER THAN THOSE LISTED IN SECTION VII–DEFINITIONS:**

**6. DEDUCTIBLE:**

$ NONE    EACH EMPLOYEE

**7. PREMIUM COMPUTATION:**

| Estimated No. of Employees | Rate Per Employee | Estimated Premium | Minimum Premium |
|---|---|---|---|
| 6 | | $ 300 | $ 300 |

**8. NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

**CG T0 09 09 93**

Page 1 of 1

PRODUCER: WTW NORTHEAST INC          G9585          OFFICE: BLUE BELL          06Z

**TABLE OF CONTENTS**

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

Beginning on Page

SECTION I - EMPLOYEE BENEFITS LIABILITY COVERAGE

    Insuring Agreement ........................................................................... 1

    Exclusions ........................................................................................ 2

    Supplementary Payments ................................................................. 3

SECTION II - WHO IS AN INSURED ................................................... 3

SECTION III - LIMITS OF INSURANCE ............................................... 4

SECTION IV - DEDUCTIBLE ............................................................... 4

SECTION V - EMPLOYEE BENEFITS LIABILITY CONDITIONS ......................................... 5

    Bankruptcy ....................................................................................... 5

    Duties in The Event of Act, Error or Omission, Claim Or Suit ...................................... 5

    Legal Action Against Us ................................................................... 6

    Other Insurance ............................................................................... 6

    Premium Audit .................................................................................. 6

    Representations ................................................................................ 7

    Separation of Insureds ..................................................................... 7

    Transfer of Rights of Recovery Against Others To Us ................................................. 7

    When We Do Not Renew .................................................................. 7

    Cancellation, Non-renewal And Renewal Conditions Applicable to
    Commercial General Liability Coverage Part .............................................................. 7

SECTION VI - EXTENDED REPORTING  PERIODS ........................................................ 7

SECTION VII - DEFINITIONS ................................................................ 8

    © 2016 The Travelers Indemnity Company. All rights reserved.

COMMERCIAL GENERAL LIABILITY

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

### THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE.
### PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VII** – Definitions.

## SECTION I – EMPLOYEE BENEFITS LIABILITY COVERAGE

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for loss to which this insurance does not apply. We may, at our discretion, investigate any negligent act, error or omission and settle any claim or "suit" that may result: But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to loss only if:

  **(1)** The loss is caused by a negligent act, error or omission committed by the insured, or by any other person for whose acts the insured is legally liable, in the "administration" of your "employee benefit program";

  **(2)** The negligent act, error or omission is committed in the "coverage territory";

  **(3)** The negligent act, error or omission was committed on or after the Retroactive Date, if any, shown in the Declarations of this Coverage Part and before the end of the policy period; and

  **(4)** A claim or "suit" for damages because of the loss is first made or brought against any insured, in accordance with Paragraph **e.** below, during the policy period or any Extended Reporting Period we provide under Section **VI** – Extended Reporting Periods.

**c.** Each negligent act, error or omission in a series of related negligent acts, errors or omissions will be deemed to have been committed on the date the first such negligent act, error or omission in that series is committed.

**d.** If the Retroactive Date is left blank in the Declarations of this Coverage Part, the Retroactive Date will be deemed to be the first day of the policy period.

**e.** A claim or "suit" seeking damages will be deemed to have been first made or brought at the earlier of the following times:

  **(1)** When we or any insured first receives written notice of such claim or "suit", whichever comes first; or

  **(2)** When we first receive written notice from any insured of a specific negligent act, error or omission that caused the loss which resulted in such claim or "suit".

All claims or "suits" that seek damages because of loss sustained by any one "employee", including the "employee's" dependents and beneficiaries, will be deemed

to have been first made or brought at the time the first of those claims or "suits" is made or brought against any insured.

**f.** A claim or "suit" that seeks damages will be deemed to have been first made or brought at the time we receive written notice from any insured of a specific negligent act, error or omission only if that notice contains all of the following information:

**(1)** How, when and where the negligent act, error or omission was committed;

**(2)** A description of what happened;

**(3)** A description of what damages may result;

**(4)** The identity of the person or organization that may make a claim or bring a "suit"; and

**(5)** The identity of each insured that committed the negligent act, error or omission.

Notice to us that any insured may in the future receive written notice of a negligent act, error or omission, claim or "suit" is not notice of a specific negligent act, error or omission.

**2. Exclusions**

This insurance does not apply to:

**a. Criminal, Dishonest, Fraudulent Or Malicious Acts**

Loss arising out of any criminal, dishonest, fraudulent, or malicious act, error or omission committed by any insured, including the willful or reckless violation of any law or regulation.

**b. Injury Or Damage**

"Bodily injury", "property damage", "personal injury" or "advertising injury."

**c. Failure To Perform A Contract**

Loss arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Loss arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment Or Advice Given With Respect To Participation**

Any claim or "suit" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Loss arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Loss for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Loss of benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

**(1)** Any taxes, fines, or penalties, including those imposed under any provision of the Internal Revenue Code of 1986, as amended, or any similar state or local law; or

**(2)** Any loss, cost or expense arising out of the imposition of such taxes, fines or penalties.

**j. Employment-Related Practices**

Loss to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practice or policy, such as coercion, demotion, reassignment, discipline, failure to promote or advance, harassment, humiliation, discrimination, libel, slander, violation of the person's right of privacy, malicious prosecution or false arrest, detention or

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG T1 01 01 16**

imprisonment applied to or directed at that person, regardless of whether such practice or policy occurs, is applied or is committed before, during or after the time of that person's employment; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of loss to that person at whom any of the employment-related practices or policies described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the loss.

**k. Access Or Disclosure Of Confidential Or Personal Information**

Loss arising out of any access or disclosure of any person's or organization's confidential or personal information.

**3. Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

**d.** All costs taxed against the insured in the "suit."

**e.** Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we made an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or

deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are also insureds, but only with respect to their liability as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Each of your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), who is or was authorized to administer your "employee benefit program."

**b.** Any person or organization having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 180th day after you acquire, or form the organization or the end of the policy period, whichever is earlier:

**b.** Coverage under this provision does not apply to any negligent act, error or omission that was committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations. This paragraph does not apply to any such partnership, joint venture or limited liability company that otherwise qualifies as an insured under Section II – Who Is An Insured.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought;

   **c.** Persons or organizations making claims or bringing "suits";

   **d.** Acts, errors or omissions; or

   **e.** Benefits included in your "employee benefit program".

2. The Aggregate Limit is the most we will pay for all damages because of all negligent acts, errors or omissions committed in the "administration" of your "employee benefit program."

3. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, because of all negligent acts, errors or omissions committed in the "administration" of your "employee benefit program".

   The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that

case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – DEDUCTIBLE**

1. The Deductible shown in the Declarations and the rules below fix the amount of damages incurred by, or on behalf of, you or any insured that you will be responsible for paying, regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought;

   **c.** Persons or organizations making claims or bringing "suits";

   **d.** Acts, errors or omissions; or

   **e.** Benefits included in your "employee benefit program".

   If no amount is shown for the Deductible in the Declarations, the Deductible does not apply to this Coverage Part.

2. The Deductible applies to all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, because of all negligent acts, errors or omissions committed in the "administration" of your "employee benefit program".

3. The Limits of Insurance will not be reduced by the amount of damages within the deductible amount.

4. The terms of this policy, including those with respect to:

   **a.** Our right and duty with respect to the defense of "suits"; and

   **b.** Your duties in the event of an act, error or omission, claim or suit;

   apply irrespective of the application of the deductible amount.

5. If we settle a claim or "suit" for damages, or pay a judgment for damages awarded in a "suit", that are subject to a deductible, we may pay any part or all of the deductible amount. You will promptly reimburse us for such part of the deductible amount as we have paid.

**SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG T1 01 01 16

**2. Duties In The Event Of Act, Error Or Omission, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it was committed; and

**(2)** The names and addresses of any "employees" who may suffer loss caused by the act, error or omission.

**b.** If a claim is made or "suit" is brought by any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of loss to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**e.** The following provisions apply to Paragraph **a.** above, but only for purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph **1.** or **2.** of Section **II** – Who Is An Insured:

**(1)** Notice to us of such act, error or omission must be given as soon as practicable only after the act, error or omission is known to you (if you are an individual), any of your partners or members who is an individual (if you are a partnership or joint

venture), any of your managers who is an individual (if you are a limited liability company), any of your "executive officers" or directors (if you are an organization other than a partnership, joint venture, or limited liability company), any of your trustees who is an individual (if you are a trust) or any "employee" authorized by you to give notice of an act, error or omission.

**(2)** If you are a partnership, joint venture, limited liability company or trust, and none of your partners, joint venture members, managers or trustees are individuals, notice to us of such act, error or omission must be given as soon as practicable only after the act, error or omission is known by:

**(a)** Any individual who is:

**(i)** A lawfully elected or appointed official, executive officer or director of any public entity;

**(ii)** A partner or member of any partnership or joint venture;

**(iii)** A manager of any limited liability company;

**(iv)** An executive officer or director of any other organization; or

**(v)** A trustee of any trust;

that is your partner, joint venture member, manager or trustee; or

**(b)** Any "employee" authorized by such partnership, joint venture, limited liability company, trust or other organization to give notice of an act, error or omission.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If valid and collectible other insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as described in Paragraphs **a.** and **b.** below.

As used anywhere in this Coverage Part, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(i)** Another insurance company;

**(ii)** Us or any of our affiliated insurance companies;

**(iii)** Any risk retention group; or

**(iv)** Any self-insurance method or program, in which case the insured will be deemed to be the provider of other insurance.

Other insurance does not include umbrella insurance, or excess insurance, that was bought specifically to apply in excess of the Limits of Insurance shown in the Declarations.

As used anywhere in this Coverage Part, other insurer means a provider of other insurance. As used in Paragraph **b.** below, insurer means a provider of insurance.

**a. Primary Insurance**

This insurance is primary. If any of the other insurance is also primary, we will share with all that other insurance by the method described in Paragraph **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or renewal in accordance with applicable insurance laws or regulations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**CG T1 01 01 16**

Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Cancellation, Nonrenewal And Renewal Conditions Applicable To Commercial General Liability Coverage Part**

All conditions relating to cancellation, nonrenewal or renewal that are included in any endorsement applicable to the Commercial General Liability Coverage Part attached to this policy also apply to this Coverage Part.

## SECTION VI – EXTENDED REPORTING PERIODS

**1.** We will provide one or more Extended Reporting Periods, as described below, if:

**a.** This Coverage Part is cancelled or not renewed for any reason; or

**b.** We renew or replace this Coverage Part with insurance that has a Retroactive Date later than the date shown in the Declarations.

**2.** The Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They only apply to claims or "suits" for loss caused by a negligent act, error or omission committed on or after the Retroactive Date shown in the Declarations and before the end of the policy period.

Once in effect, Extended Reporting Periods may not be canceled.

**3.** A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for 90 days.

The Basic Extended Reporting Period does not apply to claims or "suits" for loss covered under subsequent insurance you purchase, or that would be covered under such insurance but for the exhaustion of its applicable limit of insurance.

The Basic Extended Reporting Period does not reinstate or increase the limits of insurance.

**4.** A Supplemental Extended Reporting Period is available, but only by an endorsement and for an extra charge. This supplemental period starts with the end of the policy period and lasts for three years or an unlimited period of time, as set forth in the Supplemental Extended Reporting Period Endorsement. This supplemental period replaces the Basic Extended Reporting Period.

This Supplemental Extended Reporting Period will not go into effect unless we receive all of the following within 90 days after the end of the policy period and you have fulfilled all other duties, and complied with all other conditions and requirements, under this policy:

**a.** A written request from you to purchase the Supplemental Extended Reporting Period;

**b.** Full payment of the earned premium for this policy;

**c.** Payment of the additional premium for the Supplemental Extended Reporting Period Endorsement; and

**d.** Repayment of any deductible you owe us under this Coverage Part.

We will determine the additional premium for that endorsement in accordance with our rules and rates. The additional premium for the Supplemental Extended Reporting Period Endorsement will not exceed 200% of the annual premium for this policy.

This endorsement will set forth the terms, not inconsistent with this Section **VI** – Extended Reporting Periods, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for claims or "suits" first made or brought against any insured during such period is excess over any valid and collectible other insurance available under insurance in force after the Supplemental Extended Reporting Period starts.

The Supplemental Extended Reporting Period does not reinstate or increase the limits of insurance.

## SECTION VII – DEFINITIONS

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of the "employee benefit program";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program."

However, "administration" does not include handling payroll deductions.

**2.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**3.** "Advertising injury":

**a.** Means injury, other than "personal injury", caused by one or more of the following offenses:

**(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

**(2)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

**(a)** Appropriates a person's name, voice, photograph or likeness; or

**(b)** Unreasonably places a person in a false light; or

**(3)** Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

**4.** "Bodily injury":

**a.** Means any harm, including sickness or disease, to the health of a person.

**b.** Includes mental anguish, injury or illness, or emotional distress.

**5.** "Cafeteria plan" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**6.** "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico or Canada, provided that the insured's responsibility to pay damages is determined in a "suit" on the merits in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement we agree to.

**7.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**8.** "Employee benefit program":

**a.** Means a program providing some or all of the following benefits to your "employees", whether provided through a "cafeteria plan" or otherwise:

**(1)** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts, provided that no one other than your "employee" may subscribe to such benefits and such benefits are made generally available to all of those "employees" who satisfy the plan's eligibility requirements;

**(2)** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than your "employee" may subscribe to such benefits and such benefits are made generally available to all of those "employees" who are eligible under the plan for such benefits;

**(3)** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG T1 01 01 16

**(4)** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

**(5)** Any other similar benefits designated in the Declarations or added thereto by endorsement.

**b.** Does not include any benefit plan or program described in Paragraph **a.** above that is self-insured.

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution;

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

**(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to

have had its goods, products or services disparaged; or

**(5)** Oral or written publication, including publication by electronic means, of material that:

**(a)** Appropriates a person's name, voice, photograph or likeness; or

**(b)** Unreasonably places a person in a false light.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

**12.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property; or

**b.** Loss of use of tangible property that is not physically injured.

**13.** "Slogan":

**a.** Means a phrase that others use for the purpose of attracting attention in their advertising.

**b.** Does not include a phrase used as, or in, the name of:

**(1)** Any person or organization, other than you; or

**(2)** Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

**14.** "Suit" means a civil proceeding in which damages because of loss to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or submits with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**15.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**16.** "Title" means a name of a literary or artistic work.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – EBL

This endorsement modifies insurance provided under the following:

    EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following is added to Paragraph **1., Insuring Agreement**, of **SECTION I – EMPLOYEE BENEFITS LIABILITY COVERAGE**:

If we initially defend an insured or pay for an insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

**2.** The following is added to **SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS**:

**Your Right to Claim Information And Act, Error Or Omission Information**

**a.** When we cancel or non-renew:

Midterm cancellation or nonrenewal notices will state that, at the insured's request, we will provide claim information and information about acts, errors or omissions to the insured for the lesser of:

**(1)** At least three years; or

**(2)** The period of time during which we have provided coverage to the insured.

This information will contain:

    **(a)** Information on closed claims, including the date and description of acts, errors or omissions, and the amounts of payments, if any;

    **(b)** Information on open claims, including the date and description of acts, errors or omissions, and the amount of reserves, if any; and

    **(c)** Information on notices of acts, errors or omissions, including the date and description of acts, errors or omissions and the amount of reserves, if any.

The insured's written request for information must be made within 10 days of the insured's receipt of the midterm cancellation or nonrenewal notice. We have 30 days from the date of receipt of the insured's written request to provide the requested information.

**b.** In other circumstances:

If we receive a written request from the first Named Insured within 60 days after the end of the policy period we will provide the first Named Insured, within 45 days of the receipt of the request, the following information relating to this and any preceding employee benefits liability coverage we have issued to you during the previous three years:

**(1)** A list or other record of each act, error or omission, not previously reported to any other insurer, of which we were notified in accordance with Paragraph **2.a.** of Section **V** – Employee Benefits Liability Conditions. We will include the date and brief description of the act, error or omission if that information was in the notice we received.

**(2)** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable aggregate limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

We compile claim information and information about acts, errors or omissions for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL GENERAL LIABILITY

**Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CG F8 97 01 16**

# INTERLINE
# ENDORSEMENTS

# INTERLINE ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement applies to the insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
CYBERFIRST LIABILITY COVERAGE
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY [+] WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT COVERAGE PART
ENVIRONMENTAL HAZARD POLICY
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF TRANSPORTATION
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Commercial Liability coverage included in this policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended

**PROVISIONS**

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

85% with respect to such Insured Losses occurring in calendar year 2015.

84% with respect to such Insured Losses occurring in calendar year 2016.

83% with respect to such Insured Losses occurring in calendar year 2017.

82% with respect to such Insured Losses occurring in calendar year 2018.

81% with respect to such Insured Losses occurring in calendar year 2019.

80% with respect to such Insured Losses occurring in calendar year 2020.

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is included in the premium for such coverage. The charge for such Insured Losses that has been included for each such coverage is indicated below, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA.

- **<u>1%</u> of each applicable Commercial Liability Coverage premium.**

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**IL T3 68 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMON POLICY CONDITIONS – PROHIBITED COVERAGE – UNLICENSED INSURANCE AND TRADE OR ECONOMIC SANCTIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGES INCLUDED IN THIS POLICY

The following is added to the Common Policy Conditions:

**Prohibited Coverage – Unlicensed Insurance**

1. With respect to loss sustained by any insured, or loss to any property, located in a country or jurisdiction in which we are not licensed to provide this insurance, this insurance does not apply to the extent that insuring such loss would violate the laws or regulations of such country or jurisdiction.

2. We do not assume responsibility for:

   a. The payment of any fine, fee, penalty or other charge that may be imposed on any person or organization in any country or jurisdiction because we are not licensed to provide insurance in such country or jurisdiction; or

   b. The furnishing of certificates or other evidence of insurance in any country or jurisdiction in which we are not licensed to provide insurance.

**Prohibited Coverage – Trade Or Economic Sanctions**

We will provide coverage for any loss, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose us or any of our affiliated or parent companies to:

1. Any trade or economic sanction under any law or regulation of the United States of America; or

2. Any other applicable trade or economic sanction, prohibition or restriction.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
CYBERFIRST LIABILITY COVERAGE
DELUXE PROPERTY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY+ WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
    COVERAGE PART
ENVIRONMENTAL HAZARD POLICY
EQUIPMENT BREAKDOWN COVERAGE PART
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND
    INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF
    TRANSPORTATION
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Coverage Part or Coverage Form included in this policy that is subject to the federal Terrorism
    Risk Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

IL 00 21 09 08                    © ISO Properties, Inc., 2007                    Page 1 of 2

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 **IL 00 21 09 08**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

**1.** The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

**2. Cancellation Of Policies In Effect For Less Than 60 Days**

    We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

**3. Cancellation Of Policies In Effect For 60 Days Or More**

    If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

    **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

    **c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    **d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    **e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

    **f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known

to us. Notice of cancellation will state the specific reasons for cancellation.

5.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7.  If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

1.  **Nonrenewal**

    If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2.  **Increase Of Premium**

    If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

          © ISO Properties, Inc., 2006          **IL 02 46 09 07**

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

**1.** Surveys;

**2.** Consultation or advice; or

**3.** Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these s ervices.

The Act does not apply:

**1.** If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

**2.** To consultation services required to be performed under a written service contract not related to a policy of insurance; or

**3.** If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gro ss negligence.

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

# POLICYHOLDER NOTICES



# POLICYHOLDER NOTICES

# IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

**NO COVERAGE IS PROVIDED BY THIS NOTICE.  THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.**

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com,  call our toll-free telephone number 1-866-904-8348, or request a written copy     from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.



# POLICYHOLDER NOTICE – LEAD

Dear Policyholder:

Lead has become a difficult problem for society as a whole and the insurance industry in particular.

As a consequence, we are attaching a lead exclusion to our liability policies based upon age and occupancy of buildings. Your policy contains this exclusion.

If you have questions about your insurance program, please contact your agent or local Company representative.

# EXHIBIT "3"

**Forbes-McBean, Nadine Andrea**

| | |
|---|---|
| **From:** | Forbes-McBean, Nadine Andrea |
| **Sent:** | Monday, July 3, 2023 3:34 PM |
| **To:** | mroque@rittenhouseplazainc.com |
| **Cc:** | Chapman, Cory; Myrick, David |
| **Subject:** | RITTENHOUSE PLAZA - TETLOCK LAWSUIT |

Hello Ms. Roque,

Thank you for your time today and for the additional information you provided regarding communications from the plaintiffs.

As we discussed today, the response date to the Complaint is approaching. Travelers investigation is ongoing and subject to a full reservation of rights (as outlined in the letter I recently emailed). We have not yet determined whether we have any obligation to defend or indemnify Rittenhouse Plaza, Inc. ("Rittenhouse") in the *Philip Tetlock* lawsuit. As a courtesy to Rittenhouse, and without prejudice or waiving any of it rights, Travelers has asked Tracey McDevitt of Reilly, McDevitt & Henrich to protect the response date on behalf of Rittenhouse. We continue to fully reserve our rights, including the right to disclaim defense and/or indemnity for the *Tetlock* lawsuit.

Please let me know if you have any questions. Have a wonderful July 4th holiday.

Sincerely,
Nadine

**Nadine Forbes-McBean**
*GNC she her hers*
Travelers
PO Box 2902
Hartford, CT 06104-2902
W: 443.353.3584
nforbesm@travelers.com



1

# EXHIBIT "4"



Nadine Forbes-McBean
Strategic Resolution Group
(443) 353-3584
P.O. Box 2902
Hartford, CT 01604
NforbesM@travelers.com

## VIA EMAIL ACKNOWLEDGEMENT REQUEST

July 3, 2023

Michelle Roque
Rittenhouse Plaza Inc.
1901-1905 Walnut Street
Philadelphia, PA 19103
(via email: mroque@rittenhouseplazainc.com)

| | | |
|---|---|---|
| **Re:** | **Policyholder:** | Rittenhouse Plaza, Inc. |
| | **Matter:** | Philip E. Tetlock and Barbara A. Mellers v. Hunter Roberts Construction Group, LLC et al. [ Including Rittenhouse Plaza Inc.] In the Court of Common Please Philadelphia County, Pennsylvania Case ID: 23-0601242 |
| | **File No.:** | FXH7600 |

Dear Ms. Roque:

This letter acknowledges receipt of the above-referenced claim. As a member of the Strategic Resolution Group, I am currently investigating this matter on behalf of the Travelers Indemnity Company, the Standard Fire Insurance Company, the Travelers Casualty and Surety Company f/k/a The Aetna Casualty and Surety Company and Constitution State Insurance Company (collectively "Travelers") and any of Travelers' affiliates and subsidiaries under a complete reservation of rights.

We fully reserve our rights in this matter and neither this acknowledgment nor any future communication or investigation shall be deemed or construed as a waiver of any of our rights and defenses, including, but not limited to any rights and defenses provided under the contracts of insurance issued to Rittenhouse Plaza, Inc.

If you have any questions or would care to discuss this matter further, please do not hesitate to contact me at (443) 353-3584.

Sincerely,

Nadine A Forbes-McBean
Claims Representative

# EXHIBIT "5"



Nadine Forbes-McBean
Strategic Resolution Group (SRG)
Claims Representative
443-353-3584
nforbesm@travelers.com



P.O. Box 2902
Hartford, CT 06104

---

**SENT VIA ELECTRONIC MAIL – DELIVERY RECEIPT REQUESTED**

July 18, 2023

Michelle Roque
Rittenhouse Plaza Inc.
1901 to 1905 Walnut Street
Philadelphia, PA 19103
mroque@rittenhouseplazeinc.com

| | | |
|---|---|---|
| Re: | Policyholder: | Rittenhouse Plaza, Inc. ("Rittenhouse") |
| | Lawsuit: | Philip E. Tetlock and Barbara A. Mellers v. Hunter Roberts Construction Group, LLC, et al. [Including Rittenhouse Plaza, Inc.]; In the Court of Common Pleas, Philadelphia County, Pennsylvania; Case ID: 23-0601242 |
| | File No.: | FXH7600 |

Dear Ms. Roque:

As a member of the Strategic Resolution Group, I have reviewed the allegations in the above captioned lawsuit (hereinafter the "Lawsuit") in conjunction with the Commercial General Liability coverage part of policy Y-660-IL566839-TIL-20 (the "Policy") issued for the policy period of 08/01/20 to 08/01/2021 by Travelers Property Casualty Company of America to Rittenhouse. Based on this review, we have determined that Travelers has no obligation to defend or indemnify Rittenhouse in this Lawsuit under the Policy for the reasons set forth in this letter.

As you are aware, Rittenhouse Plaza is located at 1901-1905 Walnut Street in Philadelphia, Pennsylvania and is comprised of individual units leased to individual shareholders. The Plaintiffs are residents of Rittenhouse Plaza in Apt. 21A and are also shareholders as well as owners of a small percentage of the cooperative interests in Rittenhouse Plaza. According to the allegations in the Lawsuit, on or about July 15, 2021, during a cement column pour for The Laurel Rittenhouse construction project which is located adjacent to the Rittenhouse Plaza, the frame or form for the column exploded causing cement to rain down from the 35th floor of that building and onto fifteen floors of the Rittenhouse Plaza building including Plaintiffs' unit on the 21st floor. The incident resulted in various Common Elements and Limited Common Elements of the building, including the roof, terrace, windows, doors, and other exterior portions of the building, to be coated with approximately one quarter inch of cement. The cement explosion also caused damage to many of the exterior structures such as decorative fountains, terracotta features, decorative iron features, skylights and pavers of the building. Additionally, the cement explosion caused damage to the interior and exterior portions of the Plaintiffs' unit, including but not limited to, their terrace, balcony, window, window frame, floor, building façade, decks, exterior doors, and exterior walls. Furthermore, the explosion also caused the Plaintiffs' unit to be coated with cement which when dried, contained sharp shards that got logged in the soles of the Plaintiffs' shoes and scratched the interior unit floors titles.  Lastly, the Plaintiffs are also alleging that the cement explosion damaged or destroyed various personal property of the

Plaintiffs. As a result of all this, the Plaintiffs are now seeking to recover for the monetary damages they suffered, and will continue to suffer, including but not limited to, repair and replacement costs, permanent and irreparable damage to structures and systems within Plaintiffs' unit, costs for temporary housing, decreased value of Plaintiffs' unit and loss of time from work.

It is our understanding that Rittenhouse was not in any way responsible for the planning and/or execution of The Laurel Rittenhouse construction project at the neighboring high-rise building located at 1911 Walnut Street in Philadelphia, Pennsylvania, nor was Rittenhouse responsible for the cement pouring and resultant explosion that occurred on or about July 15, 2021.  Based on the allegations in the Lawsuit, Rittenhouse is not being sued for Negligence nor as a party responsible for the alleged damages that the Plaintiffs sustained due the cement explosion. Instead, Rittenhouse is being sued for Breach of Contract and Violation of the Pennsylvania Real Estate Cooperative Act. More specifically, the Plaintiffs are alleging that Rittenhouse failed to maintain, repair and replace the Common Elements and Limited Common Elements of the building surrounding or impacting the Plaintiffs' unit that were damaged by the cement explosion. The Plaintiffs further allege that Rittenhouse has not provided any information relating to its plans to repair and maintain the Common Elements and the Limited Common Elements and refused to allow the Plaintiffs access to inspect any records relating to the repair and maintenance of same. Finally, it also alleged that Rittenhouse impeded the flow of essential information about the scope, timing and exact nature of the repairs planned for the Plaintiffs' unit and information concerning Rittenhouse's insurance coverage for the damages, making it allegedly impossible to determine the full range of the Plaintiff's damages.  As a result, the Plaintiffs are alleging that Rittenhouse's conduct constitutes a breach of the lease with the Plaintiffs and that Rittenhouse has failed to act in good faith which is in violation of the Pennsylvania Real Estate Cooperative Act.

The Policy contains the following General Liability Coverage Form (CG T1 02 19) which is quoted in pertinent part:

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…
***

   b.  This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"
***

SECTION V – DEFINITIONS

4.  "Bodily Injury " means:
   a. Physical harm, including sickness or disease, sustained by a person; or
   b. Mental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease.

Page **2** of 5

17. "Occurrence" means:
   a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions…

23. "Property Damage" means:
   a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use be deemed to occur at the time of the physical injury that caused it; or
   b. Loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the "occurrence" that caused it.

Pursuant to the above language, the Policy provides coverage for damages that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" that is caused by an "occurrence." Based on the allegations in the Lawsuits, the Plaintiffs are seeking to recover for Rittenhouse's breach of the lease as well as for its violation of the Pennsylvania Real Estate Cooperative Act due to its failure to maintain, repair and replace the Common Elements and Limited Common Elements of the building surrounding or impacting the Plaintiffs' unit. Please note that these claims do not constitute "bodily injury" or "property damage" caused by an "occurrence" as those terms are defined in the Policy. Furthermore, these claims would be for injunctive relief which do not constitute claims for legal or compensatory damages as required by the liability portion of the Policy. Accordingly, no coverage is available for these claims under the Policy and as such, Travelers has no obligation to defend or indemnify Rittenhouse in the Lawsuit.

As previously mentioned, if you have not done so already, please place Rittenhouse's Director's & Officer's Liability carrier, McGowan Program Administrators, on notice of this Lawsuit at this time.

In addition, please be advised that the Policy also contains the following exclusions, which are quoted in part:

2. Exclusions

This insurance does not apply to:

f.    Pollution
                                        ***

   (2)    Any loss, cost or expense arising out of any:

      (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the of, "pollutants"
                                        ***
"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

j.    Damage To Property

   "Property damage" to:

(1)    Property you own, rent, or occupy, including costs or expenses incurred by you, or any other person, organization or entity for repair, replacement, enhancement restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property…

**m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

***

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

***

"Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

**a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**    You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Pursuant to exclusion **f.**, no coverage exists for any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the of, "pollutants." Accordingly, to the extent the cement is considered a "pollutant," no coverage would be available for such loss, cost or expense under the General Liability Coverage section of the Policy.

Additionally, pursuant to exclusion **j.**, no coverage exists for property damage to property owned by an insured, including any cost or expenses incurred by an insured or others to repair, replace, or maintain such property. It is our understanding that Rittenhouse is responsible for the Common Elements and the Limited Common Elements.  Accordingly, no coverage would be available under the General Liability Coverage section of the Policy for any damages and/or repairs that the Plaintiffs seek to recover with respect to the Common Elements and/or the Limited Common Elements.

Lastly, pursuant to exclusion **m.**, no coverage exits for "property damage" to "impaired property" or property that has not been physically injured arising out of a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. The Plaintiffs allege in the Lawsuit that Rittenhouse's failure to maintain, repair and replace the Common Elements and Limited Common Elements constitutes a breach of the lease with the Plaintiffs. Accordingly, to the extent the Plaintiffs suffered any "property damage" to "impaired property" or property that has not been physically injured due to Rittenhouse's breach of the lease, no coverage would be available for same under the General Liability Coverage section of the Policy.

Our coverage determination is based on the information available to us at this time. If our understanding is incomplete or incorrect, or if there is additional information bearing on coverage that you would like us to consider, please forward the same to me so that we may further evaluate coverage in light of that information.

This correspondence is neither intended to be, nor shall it be construed as, an exhaustive listing of policy terms, conditions or exclusions which might preclude coverage for the Lawsuit under the Policy. Travelers reserves the right to supplement this declination should facts and circumstances indicate the applicability of additional grounds to deny coverage for the Lawsuit.

If you have any questions or would care to discuss this matter further, please do not hesitate to contact me at 443-353-3584.

Regards,

Nadine Forbes-McBean
*She/her/hers*
Claims Representative
Travelers Insurance

cc:    Roshni Gangadharan
        WTW North America Claims
        Roshni.gangadharan@wtwco.com

# EXHIBIT "6"

# REILLY, McDEVITT, & HENRICH, P.C.

**NEW JERSEY OFFICE**
3 EXECUTIVE CAMPUS
SUITE 310
CHERRY HILL, NJ 08002
(856) 317-7180
FAX: (856) 317-7188

ATTORNEYS AT LAW
WIDENER BUILDING
SUITE 410
ONE SOUTH PENN SQUARE
PHILADELPHIA, PA 19107

————

(215) 972-5200
FAX: (215) 972-0405
www.rmh-law.com

**DELAWARE OFFICE**
1013 CENTRE ROAD
SUITE 210
WILMINGTON, DE 19805
(302) 777-1700
FAX: (302) 777-1705

Lauren C. Fantini
Member of NJ, & PA Bars
lfantini@rmh-law.com

August 24, 2023

**Via Electronic Mail – mroque@rittenhouseplazainc.com**
Michele Roque
Property Manager
Rittenhouse Plaza, Inc.

RE:     **Tetlock, et al v. Rittenhouse Plaza, Inc., et al
Philadelphia Court of Common Pleas,
Docket Number: June Term, 2023 No.: 1242**

Dear Michele:

We are in receipt of the attached correspondence from Travelers, the insurer for the Rittenhouse Plaza, Inc. dated July 18, 2023 indicating that Travelers "has no obligation to defend or indemnify Rittenhouse [Plaza, Inc.] in this Lawsuit". As a result, my Firm, Reilly McDevitt & Henrich, is no longer retained by Travelers to represent Rittenhouse Plaza, Inc. in the above captioned matter.

I would be happy to continue to represent Rittenhouse Plaza in this case. However, Rittenhouse Plaza would have be responsible to pay defense fees and costs going forward. Please call me upon receipt of this letter to discuss your options going forward and if you would like me to continue to represent Rittenhouse Plaza in this case. Our statement for professional services will be substantially based upon our firm's hourly rate for the lawyers and other firm personnel who will be performing services on your behalf. Our lawyers' hourly rate is $220 for attorneys. When feasible, some services will be performed by a paralegal or other staff member operating under the supervision of the lawyer. The current hourly rate for all paralegals is $200 per hour. Please note that our hourly rates are periodically adjusted. In preparing our statement for legal services we use hourly rates which are in effect when such services were rendered. However, we will advise you in advance of any increases of our hourly rates. You will be billed on a monthly basis for disbursements and other charges related to our professional services. Such charges may include, filing fees, long distance telephone calls, courier service, travel expenses, photo copying, computerized legal research, stenographer charges, transcripts, court costs and expert fees. In the

event that our statements are not timely paid, the firm reserves the right to suspend services until satisfactory payment arrangements are made or, if necessary, to terminate such services. Our clients, of course may terminate our service at any time.

A retainer in the amount of $5,000.00 will be initially paid with fees to be taken from the retainer. The $5,000.00 retainer is made payable to "Reilly, McDevitt & Henrich Trust Account". The retainer will continue to be replenished in the same amount upon the balance reaching less than $500.00. Any amount remaining on the retainer at the close of the case will be returned to you.

Please contact me upon receipt of this letter to discuss further. If you decline my representation, I will need to file a motion to withdraw as Rittenhouse Plaza's attorney.

Thank you for your attention. I look forward to speaking with you.

Very truly yours,

**REILLY, MCDEVITT & HENRICH, P.C.**

*/s/ Lauren C. Fantini*
LAUREN C. FANTINI

LCF/
Enclosure